[No. S054093. Mar. 20, 1997.]

MERCY HOSPITAL AND MEDICAL CENTER, Plaintiff and Appellant,
v.
FARMERS INSURANCE GROUP OF COMPANIES, Defendant and
Respondent.

214

**COUNSEL**

Philip D. Peatman and Mark W. Pike for Plaintiff and Appellant.

Chapin, Fleming & Winet, Aaron H. Katz, Shirley Banner Gauvin and Frank L. Tobin for Defendant and Respondent.

Greines, Martin, Stein & Richland, Feris M. Greenberger, Barbara W. Ravitz and Robert A. Olson as Amici Curiae on behalf of Defendant and Respondent

**OPINION**

BROWN, J.—In California, when a hospital provides care for a patient, the hospital has a statutory lien against any judgment, compromise, or settlement received by the patient from a third person responsible for his or her injuries, or the third person's insurer, if the hospital has notified the third person or insurer of the lien. (Civ. Code,[1] §§ 3045.1, 3045.2, 3045.3.) If the hospital is paid at the time the judgment, compromise, or settlement is disbursed, it is entitled to receive as much of its lien as can be satisfied out of 50 percent of

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

the recovery. (§§ 3045.2, 3045.4.) The issue in this case is what amount the hospital is entitled to when it is not paid at the time the patient's recovery against the third person's insurer is disbursed. The Court of Appeal held that the hospital's entitlement remains limited to as much of the lien as can be satisfied out of 50 percent of the recovery. The hospital contends that it is entitled to the full amount of its lien. We agree with the Court of Appeal and affirm its judgment.

## I. Facts and Procedural Background[2]

On January 24, 1992, Erik L. Schmidt was a passenger in a vehicle driven by Thomas David Schneider. Schneider was driving at a high rate of speed. The vehicle went out of control and rolled over several times, injuring Schmidt.

Schmidt was taken by helicopter to Mercy Hospital and Medical Center (Mercy). He received $77,889.51 of medical treatment and services. The value of the medical treatment received for the initial 72-hour emergency period was $49,197.95.

Schneider had a $15,000 automobile insurance policy through Farmers Insurance Exchange (Farmers). Schmidt initiated a claim for his injuries against Schneider, and Schneider tendered the claim to Farmers.

Mercy sent a notice of lien for $49,197.95 to Farmers. Sometime after receipt of this notice, Farmers, on behalf of Schneider, settled Schmidt's claim by paying Schmidt and his attorney the entire $15,000 without deduction for or payment to Mercy against its lien. There were no prior liens.

Mercy then filed this action against Farmers seeking to recover the full amount of its lien. The trial court concluded that Mercy was entitled to the sum of $7,450, consisting of half of the policy limit of $15,000 less $100. It rejected Mercy's argument that it was entitled to the full amount stated in its notice of lien, or $49,197.95, because the policy had been paid without honoring Mercy's lien. The Court of Appeal affirmed. We granted Mercy's petition for review.

## II. Discussion

"A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of

---

[2]The facts are taken from the parties' statement of agreed facts filed in the trial court.

an act." (§ 2872; Code Civ. Proc., § 1180.) A lien is created by the parties' contract or by operation of law. (§ 2881.) ▇ There are various types of personal property liens; the one at issue in this case is a statutory nonpossessory lien. Such liens are generally nonconsensual, and enacted "to compensate a person who, pursuant to express or implied contract, furnishes services or materials in the improvement of a chattel, or stores it." (4 Witkin, Summary of Cal. Law (9th ed. 1987) Personal Property, § 168, p. 156.) Here, of course, we address the parameters of a lien that compensates a hospital for providing medical services to an injured person by giving the hospital a direct right to a certain percentage of specific property, i.e., a judgment, compromise, or settlement, otherwise accruing to that person. (Cf. *National Ins.* v. *Parkview Memorial Hosp.* (Ind.Ct.App. 1992) 590 N.E.2d 1141, 1144.)

Mercy's lien is provided for and defined by sections 3045.1 through 3045.6. These sections, enacted in 1961, were California's first statutory medical lien in favor of a hospital against third persons liable for the patient's injuries. Sections 3045.1 through 3045.6 are not exclusive, and the hospital may still proceed directly against the patient for any unpaid balance. (See *City and County of San Francisco* v. *Sweet* (1995) 12 Cal.4th 105, 120 [48 Cal.Rptr.2d 42, 906 P.2d 1196] [under Government Code section 23004.1, county hospital not limited to recovery from third party tortfeasor but may recover sums due from any after-acquired assets of the patient]; 12 Cal.4th. at p. 117 [patient a "debtor whose assets the county had a preexisting right to pursue regardless of the source of those assets"]; Selected 1960-1961 California Legislation (1961) 36 State Bar J. 697, 699 [section 3045.4 not an exclusive remedy].) While in this case the third party happens to be an insurance company, the statutory scheme is applicable to any "person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries sustained." (§ 3045.3.) Thus the section is equally applicable to a patient's slip on an icy patch in front of an uninsured "Ma and Pa" grocery store, a child's fall from an uninsured neighbor's tree house, or a motorist's accident on an unsafe bridge for which a public entity and, ultimately, the taxpayers are deemed responsible.

The apparent purpose of former section 3045.4 was to secure part of the patient's recovery from liable third persons to pay his or her hospital bill, while ensuring that the patient retained sufficient funds to address other losses resulting from the tortious injury. As one author noted shortly before section 3045.4's enactment, "Few would contend that any person who is financially able to pay his medical bill should not do so. Fewer would contend that payment of medical bills should be so burdensome as to

pauperize a patient or his family." (Greenfield, *Property Liens for County Hospital Care—A Collection Tool*, Bur. Pub. Admin., 1961, Legis. Problems: No. 8, Public Medical Care, p. 3.)

Former[3] section 3045.1 provided that a hospital which "furnishes emergency medical or other services of a reasonable value in excess of one hundred dollars ($100) to any person injured by reason of an accident or wrongful act not covered by [worker compensation] . . . shall, if the person asserts or maintains a claim against another for damages on account of his injuries, have a lien upon the damages in excess of one hundred dollars ($100) recovered, or to be recovered, by the person, . . . to the extent of the amount of the reasonable and necessary charges of the hospital for the treatment, care, and maintenance of the person in the hospital during the emergency period." (Stats. 1961, ch. 2080, § 1, p. 4340.) The emergency period may not exceed 72 hours. The lien applies "whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise." (§ 3045.2.)

For the lien to take effect, the hospital is required to give written notice of "the amount claimed as reasonable and necessary charges for the emergency period . . . to each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries sustained." (Former § 3045.3, as enacted by Stats. 1961, ch. 2080, § 1, p. 4340.) This notice must be sent prior "to the payment of any moneys to the injured person, his attorney, or legal representative as compensation for the injuries." (*Id.* at p. 4341.) The hospital is further required to give notice "to any insurance carrier known to the hospital which has insured the person, firm or corporation alleged to be liable to the injured person against the liability." (*Ibid.*) There is no dispute that Mercy gave Farmers notice in compliance with this section.

Former section 3045.4, the section at issue in this case, provides in relevant part: "[a]ny person, firm, or corporation, including but not limited to an insurance carrier, making any payment to the injured person, or to his attorney, . . . for the injuries he sustained, after the receipt of the notice as herein provided, without paying to the . . . hospital *the amount of its lien*

---

[3]At the time Mercy provided care for Schmidt and gave Farmers notice of its lien, the lien was limited to an "emergency period" not to exceed 72 hours, and a $100 floor was deducted before calculating the 50 percent amount. (Former §§ 3045.1, 3045.4, as enacted by Stats. 1961, ch. 2080, § 1, pp. 4340, 4341.) In 1992, sections 3045.1, 3045.3, and 3045.4 were amended to in part expand the lien's scope to include "emergency and ongoing medical or other services," and delete the $100 floor. These amendments do not affect the resolution of the issue before us.

*claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys* exceeding one hundred dollars ($100) due under any final judgment, compromise, or settlement agreement after paying any prior liens *shall be liable to the . . . hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person.*" (Stats. 1961, ch. 2080, § 1, p. 4341, italics added.) The "hospital may, at any time within one year after the date of the payment to the injured person, . . . enforce its lien by filing an action at law against the person . . . making the payment and to whom" the required notice was given. (§ 3045.5.)

■ Here, Mercy's lien was $49,197.95, and the policy limit $15,000. The parties agree that former section 3045.4 obligated Farmers to pay one-half of the policy minus $100, or $7,450, to the hospital at the time the $15,000 was disbursed. Their dispute is over what amount Farmers is liable for once it disbursed the policy limits without paying Mercy $7,450. Mercy contends that pursuant to former section 3045.4, Farmers is now obligated to pay the *entire amount* of the hospital's lien, or $49,197.95. Farmers, on the other hand, contends that this section simply provides that the insurer remains liable to pay Mercy $7,450 "notwithstanding the fact that it has already paid its policy limits to the injured party."

■ "We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." (*People* v. *Jenkins* (1995) 10 Cal.4th 234, 246 [40 Cal.Rptr.2d 903, 893 P.2d 1224].) If "the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

Since its enactment 36 years ago, former section 3045.4 has been the subject of scant interpretation. Most of these interpretations and commentary, which are in summary form and without critical analysis, have concluded that former section 3045.4 makes the insurer or other payor liable for the full amount of the hospital's lien if the insurer or other payor fails to pay the hospital at the time any recovery is disbursed. In *City and County of San Francisco* v. *Sweet, supra,* 12 Cal.4th 105, we stated in dicta, "section 3045.4 provides that unless the entity given notice pays to the claimant as much of the amount of the lien as can be paid out of 50 percent of the damages recovered, that entity is responsible for the full amount of the lien." (*Id.* at p.

122, fn. 11; see Selected 1960-1961 California Legislation, *supra*, 36 State Bar J. at p. 698 [lien limited to 50 percent of the amount the injured person recovers from third person, "[b]ut, if the third person after receiving the notice fails to pay such amount to the hospital, then he is liable to the hospital for the full amount of its lien claimed in the notice"]; see also 63 Ops.Cal.Atty.Gen. 808, 813-814 (1980) ["[s]hould the tortfeasor or his insurance carrier make payment to the injured *after* receiving notice from the hospital of its lien, they become liable to the hospital for the amount of its lien claimed in the notice" (original italics)]; but see 4 Witkin, Summary of Cal. Law, *supra*, Personal Property, § 193, p. 184 ["Payment to the injured person in disregard of the notice makes the person notified liable to the hospital for the amount of its lien, 'or so much thereof as can be satisfied out of 50 percent of the moneys . . . due' under any judgment or settlement."].)

██ We begin with the language of the statute. The relevant language of former section 3045.4, that the insurer "shall be liable to the . . . hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment" is ambiguous. On one hand, it could mean, as Mercy contends, that if the insurer or other payor does not pay the hospital "the amount of its lien . . . or so much thereof as can be satisfied out of 50 percent of the moneys" at the time the judgment or settlement proceeds are disbursed, the insurer or other payor is liable for the full "amount of [the hospital's] lien claimed in the notice which the hospital was entitled to receive as payment," here $49,197.95. On the other hand, the language "which the hospital was entitled to receive as payment," is written in the past tense. Thus, the "amount of [the hospital's] lien . . . which the hospital was entitled to receive as payment" may refer back, as Farmers contends, to the amount the hospital was entitled to receive at the time the judgment or settlement was disbursed. This would be the "lien . . . or so much thereof as [could] be satisfied out of 50 percent of the moneys." Here, that amount is $7,450.

We conclude that Farmers' construction is the more reasonable. At the time former section 3045.4 was enacted, it was a settled principle in California that a debtor, notified that part of its debt had been assigned to another, did not extinguish that debt by paying the original obligee in full. Rather, despite full payment to the original obligee, the debtor remained liable to the assignee for the amount of the assignment. (*McCloskey* v. *San Francisco* (1884) 66 Cal. 104, 104-105 [4 P. 1092] [city's payment to laborers, whose claim had been assigned to plaintiff, did not affect city's obligation to also pay plaintiff].) Likewise, an attorney in possession of a judgment or settlement, and on notice of an outstanding lien, generally

remained liable for the amount of that lien if he or she distributed the funds without satisfying the lien. (*Jones* v. *Martin* (1953) 41 Cal.2d 23, 28 [256 P.2d 905], overruled on other grounds in *Fracasse* v. *Brent* (1972) 6 Cal.3d 784, 791-792 [100 Cal.Rptr. 385, 494 P.2d 9] [neither defendant union nor plaintiff's attorney could pay plaintiff money recovered and be relieved of obligation to satisfy former attorney's lien unless former attorney waived or was estopped to assert such rights]; see *Cooper* v. *Spring Valley Water Co.* (1911) 16 Cal.App. 17, 27 [116 P. 298] [defendant company had right to decide without court's aid who it would recognize as stock owner, " 'but it took the risk of having to pay the true owner the value of the stock if it turned out that the person it had recognized as the owner was not the true owner.' "].) Nothing in these cases suggests, however, that the amount of the debtor's obligation *increases* if it neglects to pay the lien creditor or assignee of the debt. We presume that the Legislature was aware of these principles when it drafted former section 3045.4, and that the language the "amount of [the hospital's] lien . . . which the hospital was entitled to receive as payment" simply incorporates this common law principle with respect to the hospital's newly created statutory lien. (See *Estate of McDill* (1975) 14 Cal.3d 831, 839 [122 Cal.Rptr. 754, 537 P.2d 874].)

Contrary to Mercy's assertion, there is no incentive under this interpretation to ignore the hospital's lien. It is unlikely that an insurance company or any other person or entity obligated to pay for the patient's injuries would entertain a preference as to whom it paid the judgment, compromise, or settlement amount. Moreover, while the insurance policy proceeds in this case—and Farmers' concomitant continuing liability to pay Mercy—are marginal, in many other cases the insurance policy or other settlement or judgment will be for a substantially greater amount. Thus, for example, if the insurance policy proceeds disbursed in this case without paying Mercy had been $100,000, Farmers would still be obligated to pay Mercy the entire $49,197.95, *in addition to* having already paid Schmidt $100,000. Similarly, a public entity, and ultimately the taxpayers, held liable for the accident in this case and disbursing a judgment of $50,000 without paying the hospital $24,950, or 50 percent of $49,900, would continue to be obligated to pay the hospital $24,950. The Legislature may well have concluded that this result provided sufficient incentive on the part of the insurance company or other payor to pay the hospital at the time of judgment, compromise, or settlement.

If the Legislature had intended that an insurer or other payor who failed to pay the hospital up to 50 percent of the policy at the time the judgment or settlement was disbursed was then liable for the *full amount* of the hospital's emergency care (and after the 1992 amendments *both* emergency and ongoing care), we suspect that such a dramatic consequence would have been

mentioned in the statute's legislative history. Nowhere, however, in the statute or its legislative history does the Legislature refer to a hospital obtaining the "full" amount of its lien. Nor is there any discussion of an increase in the insurer's or other payor's liability if the insurer or other payor fails to pay the hospital at the time of judgment or settlement. Rather, the legislative history indicates that the lien "is only applicable . . . to 50% of the damages received by the injured person . . . ." (Letter from Sen. Murdy to Governor Brown, June 19, 1961, p. 1; Legis. Counsel Rep. on Sen. Bill No. 1140 (1961 Reg. Sess.) ["Limits lien to 50 percent of any recovery against the third party in excess of $100."]; Legis. Sect., Bill Mem. on Sen. Bill No. 1140 (1961 Reg. Sess.) July 17, 1961, p. 1 ["Authorizes a lien up to 50 per cent on any recovery of damages received by a person as a result of a personal injury action against a third party to the extent of the reasonable and necessary charges for hospital care and treatment rendered such person during an emergency."].)[4] Indeed, the measure was apparently enacted in response to a California Hospital Association's membership survey that revealed at least $90,000 was lost as a result of injured persons collecting a judgment or settlement and failing to "discharge *any portion* of the hospital bill." (Legis. Sect., Bill Mem. on Sen. Bill No. 1140 (1961 Reg. Sess.), *supra*, at p. 1, italics added.)

The dissenting opinion sets forth an approach not suggested by either party to this litigation, i.e., that Mercy is entitled to $14,900, or the full amount of the insurance policy less $100. Former section 3045.4, however, does not refer to the hospital receiving the entire judgment or settlement amount. Rather, it refers only to "the amount of [the hospital's] lien . . . or so much thereof as can be satisfied out of 50 percent of the moneys" and the "amount of [the hospital's] lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person." (Stats. 1961, ch. 2080, § 1, p. 4341.) The only two possible constructions of this language when the hospital is not paid at the time of judgment, compromise, or settlement, is that the hospital is entitled to either the full amount of its lien, here $49,197.95, or as much of its lien as can be satisfied out of 50 percent of the judgment, compromise, or settlement amount less $100, here $7,450. For the reasons discussed above, we have chosen the latter interpretation.

Whatever principles might generally apply to liens, former section 3045.4 is a statutory, not a common law, lien. The Legislature is, of course, free to

---

[4]Moreover, nothing in the language or legislative history of section 3045.4 as amended in 1992 indicates that the payor becomes liable under these circumstances for the full amount of the lien. (See *People* v. *Pieters* (1991) 52 Cal.3d 894, 902, fn. 5 [276 Cal.Rptr. 918, 802 P.2d 420] ["Although this amendment does not assist us in discovering the intent behind [the statute] as originally enacted, we observe the Legislature's subsequent actions do not conflict with our interpretation of that statute."].)

define and limit such a lien, and has done so in this case. (*Berry* v. *Hannigan* (1992) 7 Cal.App.4th 587, 592 [9 Cal.Rptr.2d 213].)

We conclude under former section 3045.4 that when an insurer or other payor fails to pay a hospital "the amount of its lien . . . or so much thereof as can be satisfied out of 50 percent of the moneys exceeding one hundred dollars" at the time the judgment, compromise, or settlement is disbursed, the insurer or other payor remains liable to the hospital for this amount and no more. The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., and Chin, J., concurred.

**BAXTER, J.**—I respectfully dissent. Convinced that the plain meaning of the statutory scheme before us can have unfair results, the majority find a nonexistent ambiguity in order to justify a construction they deem more equitable. Accordingly, they conclude that if the payor of personal injury damages dishonors a hospital's perfected emergency-care lien when disbursing damage proceeds, thus forcing the hospital to a cumbersome and time-consuming lawsuit to collect any portion of its bill, the hospital may still recover from the payor an amount no greater than 50 percent of the original damage proceeds, even if the hospital's legitimate costs for the victim's emergency care, as claimed in its lien notice, far exceed that sum.

I cannot agree. In clear and unmistakable prose, Civil Code sections 3045.1 through 3045.5, as originally enacted in 1961,[1] state as follows: A hospital may perfect an emergency-care lien against an injury victim's damage recovery in excess of $100. This lien is "to the extent of the amount of the reasonable and necessary charges" for the care provided. (Former § 3045.1, as enacted by Stats. 1961, ch. 2080, § 1, p. 4340.) If the payor of damages discharges the lien directly from the damage proceeds themselves, the payor's responsibility to the hospital is limited to "so much [of the amount of the claimed lien] as can be satisfied out of 50 percent of the moneys" to be disbursed. (Former § 3045.4, as enacted by Stats. 1961, ch. 2080, § 1, p. 4341.) *However*, if the payor fails to honor the lien at the time damages are disbursed, the payor "shall be liable," in a lawsuit by the hospital, for the *full* "amount of [the claimed] lien . . . which the hospital was entitled to receive as payment" for the emergency care rendered to the victim. (*Ibid.*)

As almost every previous commentary on these statutes has observed, their language thus leaves no doubt that if the lien was dishonored in the

---

[1] All further unlabeled statutory references are to the Civil Code.

disbursement of damages, the 50 percent limit no longer applies. This plain statutory meaning is neither implausible nor arbitrary. The Legislature could well have wished to discourage both negligent and intentional misappropriation of the hospital's share. It could also have concluded that the hospital is entitled to extra consideration and incentive for the time, trouble, expense, and delay involved in suing for its bill after the lien remedy, which was designed to absolve the hospital of such difficulties in return for limits on its interest in the damage proceeds, has been dishonored.

On the other hand, the statutes do not remove all limits on the hospital's recovery from a payor of tort damages who dishonored the hospital's lien. In every case, the statutes measure the hospital's entitlement against the payor by the "amount of [the hospital's] lien," which can never exceed the full amount of the damage proceeds against which the lien attached. Thus here, where an insurance carrier ignored an emergency care lien for medical costs of $49,197.95 when disbursing a $15,000 damage settlement, the carrier should be liable to the hospital not for $7,450, as the majority calculate, but for $14,900 (the amount of the damage recovery above $100).

This case invokes the most fundamental principle of statutory construction. "[O]ur primary task in construing a statute is to determine the Legislature's intent. [Citation.] 'The court turns first to the words themselves for the answer.' [Citation.]" (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it. [Citation.]" (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) "[W]here the meaning of a statute is clear, courts 'must follow the language used and give to it its plain meaning, whatever may be thought of the wisdom, expediency, or policy of the act . . . .' " (*Woodmansee* v. *Lowery* (1959) 167 Cal.App.2d 645, 652 [334 P.2d 991].)

I therefore examine the statutory language in detail. Former section 3045.1 provides that a hospital "which furnishes emergency medical or other services of a reasonable value in excess of one hundred dollars . . . to any person injured by reason of an accident or wrongful act not covered by [the workers' compensation statutes], shall, if the person asserts or maintains a claim against another for damages on account of his injuries, have a lien upon the damages in excess of one hundred dollars . . . recovered, or to be recovered . . . to the extent of the amount of the [hospital's] reasonable and necessary charges . . . for the treatment, care, and maintenance of the person in the hospital during [an] emergency period" up to 72 hours. (Stats.

1961, ch. 2080, § 1, p. 4340.) Under section 3045.2, "[t]he lien shall apply whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise."

Former section 3045.3 describes the procedures for perfecting the lien. These require that, before any damages are disbursed to the injured person, the hospital deliver, either in person or by registered mail, a written notice of lien, stating the amount of emergency care expenses claimed, to all persons "known to the hospital and alleged to be liable" for the injury, and to the liability insurers of such persons. (Stats. 1961, ch. 2080, § 1, p. 4340.)

Former section 3045.4 sets forth the responsibilities and liabilities of a person who, after receiving notice of the hospital's lien, makes "any payment to the injured person, or to his . . . representative[s], for the injuries he sustained." (Stats. 1961, ch. 2080, § 1, p. 4341.) If the person making such a payment does so "without paying to the . . . hospital the *amount of its lien claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys exceeding one hundred dollars . . . due*" under a final judgment or settlement after the payment of prior liens, then the payor "shall be liable to the . . . hospital for *the amount of its lien claimed in the notice which the hospital was entitled to receive as payment*" for the emergency care provided to the victim. (*Ibid.*, italics added.) Section 3045.5 provides that within one year after a payment to the injured person, the hospital may bring a legal action against the payor to enforce its lien.

Thus, the statute makes a clear distinction between what the hospital may receive directly from the damage proceeds, on the one hand, and what the payor owes the hospital if he fails to honor the lien when proceeds are disbursed, on the other. In the first case, the hospital may obtain the "amount of its lien claimed in the notice," but *only up to 50 percent of the total damage proceeds available* after payment of prior liens. (Former § 3045.4.) In the latter case, the payor's liability to the hospital is measured by exactly the same standard, i.e., "the amount of its lien claimed in the notice," but *without reference to the 50 percent limit. (Ibid.)*

As the majority concede, since the inception of this statutory scheme, every commentary on its meaning, save one, has indicated that once the hospital's lien has been overlooked in the initial disbursement of judgment or settlement proceeds to the injury victim, the 50 percent limit no longer applies. (63 Ops.Cal.Atty.Gen. 808, 813-814 (1980); Selected 1960-1961 California Legislation (1961) 36 State Bar J. 697, 698; but see 4 Witkin, Summary of Cal. Law (9th ed. 1987) Personal Property, § 193, p. 184.) We

recently confirmed that assumption. (*City and County of San Francisco* v. *Sweet* (1995) 12 Cal.4th 105, 122, fn. 11 [48 Cal.Rptr.2d 42, 906 P.2d 1196].)

The majority reject this long-standing consensus. Concerned that the statute's literal words would expose the payors of personal injury damages to unjust and disproportionate liability for the victim's medical payments in excess of his actual damage recovery, the majority purport to find an ambiguity which allows a more "reasonable" construction.

The majority note that former section 3045.4 makes a payor who overlooks the hospital's lien liable only for "the amount . . . which the hospital *was* entitled to receive as payment" for the victim's emergency care. (Italics added.) The statute's use of the past tense verb "was," the majority reason, is most "reasonabl[y]" interpreted as referring back, not to the time services were rendered and costs incurred, but simply "to the amount the hospital was entitled to receive *at the time the judgment or settlement was disbursed.*" (Maj. opn., *ante*, at p. 220, italics added.) Thus, the majority conclude, if the disburser has mispaid proceeds which the hospital was entitled to receive in satisfaction of its lien, the payor simply remains liable to the hospital, from his own funds, for the mispaid amount, which cannot exceed 50 percent of the total proceeds previously disbursed.

This circular analysis is fatally flawed. In the first place, the majority's interpretation disregards the relevant wording of the statutory scheme as a whole. As already indicated, former section 3045.1 establishes the hospital's lien "to the extent of the amount" of its legitimate (i.e., "reasonable and necessary") charges for the victim's emergency care. Under former section 3045.4, if the lien is satisfied directly from the proceeds of a judgment or settlement in the victim's favor, the hospital is entitled to receive "the amount of its lien claimed in the notice," with the sole restriction that no more than 50 percent of the judgment or settlement proceeds shall be diverted from the victim to satisfy the lien.

On the other hand, if the lien is dishonored when such proceeds are disbursed, the payor is liable to the hospital for "the amount of its lien claimed in the notice which the hospital was entitled to receive *as payment for the medical care and services rendered to the injured person.*" (Former § 3045.4, italics added.) The majority ignore the italicized modifying words. When those words are considered, the phrase "was entitled to receive," which the majority find crucial in former section 3045.4, appears clearly to refer to the full amount of medical costs for which the hospital *became*

entitled to payment *when* it "[rendered] the medical care and services . . . to the injured person."

The majority err by concluding, in effect, that parallel phrases with obvious and material semantic differences must be interpreted as if they were identical. In the majority's lexicon, the phrase "the amount of its lien claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys . . . due under [a] judgment . . . or settlement" means exactly the same thing as "the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for . . . care and services rendered."

Such cannot be the case. The majority offer no reason, other than vague notions of equity, for concluding that it is.

If the Legislature's purpose was that deduced by the majority, it could scarcely have chosen a more obscure and convoluted way to express its intent, though simpler alternatives were readily at hand. For example, the Legislature could easily have declared that if the payor of a judgment or settlement dishonors the hospital's lien when disbursing such proceeds, the payor remains liable to the hospital for the amount mispaid.

But this is not what the statutes say. Instead, their words and design manifestly create two different standards of recovery by the hospital from the payor of a personal injury judgment or settlement, depending on whether the hospital's lien is satisfied or dishonored when the proceeds of the judgment or settlement itself are disbursed.

Nor may we depart from this plain meaning on the premise that the literal import of the statutory scheme is arbitrary or implausible. There seems ample justification for the two-tiered system established by the statutes.

As the majority explain, a hospital is always entitled, in theory, to full recovery of its costs of an injury victim's care. Apart from the statutes at issue here, the hospital may proceed at law directly against the patient for the entire amount of its reasonable and necessary charges. (Maj. opn., *ante*, at p. 217; Selected 1960-1961 California Legislation, *supra*, 36 State Bar J. at pp. 697, 699; see *City and County of San Francisco* v. *Sweet, supra*, 12 Cal.4th 105, 120.)

But such a suit entails significant costs and risks for both the hospital and the injured patient. Both must incur the delays and legal expenses necessary to resolve the suit. Until a judgment is won, if at all, the hospital has no

specific claim against the victim's assets, which he is free to dissipate. On the other hand, once the hospital's suit prevails, whatever assets the victim does have, including any tort recovery he previously received, may be exposed to the full extent of the hospital's judgment. Thus, when the hospital bill is high, the victim impecunious, and his recovery of tort damages modest, such a legal action could wipe out the victim's damage recovery—even reduce him to poverty—while still providing no guarantee that the hospital will recover all, or even any, of its costs of the victim's emergency care.

The statutory lien device offers a form of trade-off, which provides the hospital, the victim, and the payor of damages some limited protection in such cases. Without pursuing or obtaining a judgment against any person, the hospital may, by a simplified notification process, secure a right of recoupment directly from particular assets, i.e., the victim's tort damage recovery in the hands of the payor. The hospital's risk that no assets will be available for recoupment is thus significantly reduced. As justice might suggest, the direct source of available assets, and the person obligated to ensure satisfaction of the lien, is not the innocent victim, but the one already responsible in damages for the victim's injury.

On the other hand, the hospital may recover, under this simplified and safer procedure, no more than half of such damage proceeds after payment of prior liens. Thus, the statutes assure the victim that, no matter how high his emergency hospital bill, the entire amount of his judgment or settlement will not be diverted to pay it. Where the payor honors the lien, the statutory scheme also guarantees that the payor's total monetary responsibility will not exceed the amount for which he became obligated under the judgment or settlement. Sometimes the hospital will not get full reimbursement through this process. However, the lien statutes give the hospital an incentive to conclude in such cases that a bird in the hand is worth two in the bush, and that half a loaf is better than none.

Given these considerations, the Legislature could decide that negligence in implementing the nonjudicial lien remedy should be strongly discouraged. The Legislature could also seek to dissuade damage payors from colluding with injury victims to deprive hospitals of their rightful share of the damage proceeds.

Moreover, when a payor dishonors a hospital's lien by misdistributing the hospital's share of the liened proceeds, he disrupts the balance on which the lien remedy depends. Once the liened assets have thus passed from the

payor's hands, the lien itself is destroyed, and the hospital's statutory security interest has evaporated. Moreover, unless someone will pay voluntarily, the hospital must now assume the effort, risk, cost, and delay of a legal action in order to recoup any portion of its bill.

The Legislature could well have determined that these increased risks and costs, caused entirely by the mistake of a person responsible for the victim's damages, should be compensated by the hospital's opportunity to collect from that person a portion of its bill exceeding the earlier maximum of 50 percent of the victim's tort judgment or settlement. I find such a legislative choice understandable and unremarkable.

The majority's fears that this reading of the statutes may expose the payor to disproportionate liability for the victim's hospital bill are exaggerated. Correctly construed, the statutory scheme does not remove all relationship between the size of the victim's damage recovery and the amount the hospital may recover from the payor.

While the statutes plainly remove the 50 percent limit when the hospital's lien has been dishonored, they do contain some ambiguity about what measure of recovery then applies. In such a case, the payor is liable for "the amount of [the hospital's] lien claimed in the notice which the hospital was entitled to receive as payment" for the medical services rendered. (Former § 3045.4.) Because the hospital's lien was "to the extent" of its full legitimate charges (former § 3045.1), and because former section 3045.4 refers to the "amount . . . claimed in the notice which the hospital was entitled to receive" for services rendered, this formula could be interpreted to mean the hospital may recover, from a payor who dishonored its lien, the full amount of its bill, regardless of the amount the injury victim recovered from the payor.

However, an alternative construction seems more plausible. Under former section 3045.4, the hospital's recovery is measured, and limited, by "the amount of [the hospital's] *lien*" in the particular case. (Italics added.) "A lien is a charge imposed . . . upon *specific property* by which [such property] is made security for the performance of an act." (§ 2872, italics added; see also Code Civ. Proc., § 1180.) Hence, while the amount *secured* by a lien may be unlimited, the lien itself grants no rights except in the specific property to which it attaches, and thus is never worth more than the value of the liened property.

Here, the lien in question is upon "the damages in excess of one hundred dollars . . . recovered, or to be recovered, by the [injured] person" or his

representatives. (Former § 3045.1.) By referring specifically to the *lien* and its "amount," not simply to the hospital's charges or costs independent of any lien, the phrase "amount of its lien," as used in former section 3045.4, most logically implies a limitation to the *actual value of the lien*, insofar as that value is insufficient to cover the hospital's full expense.

The fact that the lien is "to the extent" of the full reasonable charges for emergency services rendered to an accident victim means simply that a hospital may theoretically obtain rights in the victim's damage recovery up to that full amount. In other words, no statutory ceiling is imposed on the amount of reasonable charges which the lien may secure or the amount of damages against which it may attach. On the other hand, insofar as the damages won by the victim in a particular case are less than the hospital's full reasonable charges, the value of the corresponding lien is limited by the amount of the actual damages to which it attaches. In practical effect, the "amount of [the] lien" is the value of the damage proceeds against which it applies, up to the full amount of the hospital's charges.

Of course, once the payor has misdistributed the liened proceeds, the lien itself is extinguished. However, this does not alter the meaning of the term "*amount* of [the] lien" as that term should thereafter apply. This "amount," independent of the specific assets to which it formerly related, persists as the measure of recovery even after the lien itself no longer exists.

Thus where, as here, the hospital's bill exceeds the damage proceeds payable to the victim, the hospital may receive no more than 50 percent of those proceeds when they are disbursed, as all agree. On the other hand, if the payor withholds such a disbursement from the hospital, he thereafter becomes liable for the full "amount of [the hospital's] lien," unlimited by the 50 percent formula. But because the hospital's bill for the victim's emergency care exceeds the total damage proceeds for which the payor was originally obligated, the "amount of [the] lien" is the lesser sum, i.e., the amount of the damage proceeds. This is the maximum recovery the hospital may obtain from the payor who dishonored its lien.

This construction reconciles the clear legislative purpose to provide a different formula for recovery after the hospital's lien is dishonored, on the one hand, with the statutory use of the "lien amount" concept as the measure of the hospital's maximum recovery, on the other. It also avoids the injustice which might arise in particular cases if a payor of minimal tort damages, having overlooked a hospital's lien when disbursing such proceeds, thereby

became liable for an unlimited amount of hospital charges far exceeding the damage payment itself.[2]

Here, as previously indicated, the amount claimed by Hospital for the emergency care of victim Schmidt exceeded $49,000, but the disbursable damages to which Hospital's lien attached, and thus the actual value or "amount of its lien," came only to $14,900 ($15,000 minus $100). Because defendant Farmers Insurance Group (Farmers) disregarded Hospital's lien when disbursing the agreed amount of damages to Erik L. Schmidt, Farmers became liable to Hospital for the full "amount of [this] lien." Hence, under former section 3045.4, Hospital is entitled to recover $14,900 from Farmers.

Accordingly, I would reverse the judgment of the Court of Appeal. The cause should be remanded to the Court of Appeal with directions to order the superior court to vacate its judgment and enter a new judgment for Hospital in the amount of $14,900.

Kennard, J., and Werdegar, J., concurred.

---

[2]The majority insist former section 3045.4 either allows a hospital whose lien was dishonored to recover its full charges (here $49,197.95), or limits the hospital in such a case to 50 percent of the damage proceeds over $100 (here $7,450), but cannot be reconciled with the third alternative I recommend—a recovery limited to the full amount of the damage proceeds above $100 (here $14,900). However, the language the majority cite undermines their "all or nothing" view, since it tethers the hospital's recovery after its lien was dishonored to the "amount of [the] lien." (Former § 3045.4, italics added.) The majority implicitly acknowledge the common law principle that the amount or value of a lien is limited to the value of the security to which it attaches. They suggest, however, that the Legislature is free to "define and limit" a statutory lien and has done so here. (Maj. opn., ante, at p. 222, citing Berry v. Hannigan (1992) 7 Cal.App.4th 587, 592 [9 Cal.Rptr.2d 213] [statute may compel release of auto tower's lien upon payment of towing and impound charges by credit card].) But there is no indication the Legislature used the word "lien" in any other than its commonly understood sense.

Nor, contrary to the majority's implication, would our adoption of my third alternative come as a surprise to the parties. Though both sides took "all or nothing" positions in their briefs, I raised the third alternative with both counsel at oral argument. Counsel for plaintiff Mercy Hospital and Medical Center (Hospital) conceded that my approach was a reasonable interpretation of former section 3045.4, though he had not previously considered it. Of course, this court is not limited in any event to a rigid choice between the precise statutory constructions offered by the parties themselves.