Marina GRAUBERGER Plaintiff,

v.

ST. FRANCIS HOSPITAL, Catholic
Health Care West, Defendants.

No. C–00–2625 CAL.

United States District Court,
N.D. California.

June 15, 2001.

Laurence F. Padway, Law Office of Laurence F. Padway, Alameda, CA, for plaintiff.

John F. Libby, Mnatt Phelps & Phillips, Los Angeles, CA, for defendant.

### ORDER ON CROSS–MOTIONS

LEGGE, District Judge.

Defendants St. Francis Memorial Hospital (the "Hospital") and Catholic Healthcare West ("CHW") (collectively "defendants") move for summary judgment on the first amended complaint ("FAC"). Plaintiff cross-moves for partial summary judgment, seeking: (1) an injunction restraining defendants from asserting or collecting on the hospital lien discussed below; and (2) an order stating that the funds currently held in trust *pendente lite* be disbursed to Grauberger.

The motions have been briefed, argued and submitted for decision. Having considered the arguments of counsel, the moving and opposing papers, the evidence of

record, and the applicable authorities, the court now orders as follows.

## I.

The underlying facts are not significantly in dispute. Plaintiff was injured in an automobile collision on January 14, 1998. She received treatment for her injuries at the Hospital between April 20 and April 24, 1998 and again between January 19 and January 23, 1999. She alleges that her group insurance policy—issued by Blue Cross as part of the employee benefit plan of United Airlines, her spouse's employer—paid the hospital its negotiated rates in full except for the deductible amounts and copayments, which plaintiff paid herself.[1] *See* FAC at ¶¶ 5–6.

Grauberger brought suit against Loren Holden, the driver who allegedly caused the accident ("tortfeasor"). FAC at ¶ 7. The Hospital then filed a lien in that action pursuant to the Hospital Lien Act ("HLA"), California Civil Code sections 3045.1–3045.6, seeking to recover the bal-

ance of its "regular rates," *i.e.*, the difference between the Hospital's normal rates and the negotiated rates that it charged to Grauberger as a plan member.[2] Grauberger settled the suit with Holden for $100,000. After deducting attorneys' fees and costs, the net proceeds to plaintiff from the settlement totaled $63,495.48.[3] Plaintiff and defendants have placed half of this figure, or $31,747.74, in trust pending resolution of this suit. *See* FAC at ¶ 11.

## II.

Plaintiff filed the instant action in San Francisco Superior Court and alleges that the Hospital is "double billing" her. FAC at ¶ 8. She contends that she and her insurance plan had already paid their negotiated rate in full, so there was no underlying obligation for the Hospital's lien in the Holden lawsuit. *Id.* at ¶ 10. Moreover, plaintiff alleges that defendants' customary charges are "false and inflated" and are intentionally concealed from pa-

---

1. The precise figures are itemized in the declaration of Barbara Braga in support of defendants' motion. Grauberger's first hospitalization resulted in $46,707.86 in actual charges and the second hospitalization resulted in $40,381.17 in actual charges. *See* Braga Decl. at ¶¶ 3–4. Blue Shield made negotiated payments of $22,590.96 and $4,011.41 for the two hospitalizations respectively, *see id.* at ¶¶ 7 & 10, and also contributed $39.50 and $93.70 for professional fees on the two visits (*e.g.*, for radiology and pathology services), *see id.* at ¶¶ 8 & 11. Grauberger made co-payments of $674.22 and $831.59 respectively for the hospitalizations, *see id.* at ¶¶ 7 & 10, and she contributed $138.00 and $157.00 respectively for associated professional fees, *see id.* at ¶¶ 8 & 11.

2. The Hospital, through counsel, sent copies of the lien notice to Grauberger's counsel and to Holden's counsel on June 29, 1999. *See* Colman Decl., Exh. A. The lien notice stated that the Hospital's "reasonable and necessary charges" for the treatment of Grauberger were $87,089.03. *Id. See* Cal.Civ.C. § 3045.3.

3. The court notes in passing that the parties used the "common fund theory" in calculating the amount of the recovery available after settlement. *See* Def. Motion at 7:17–24; Colman Decl., Exh. B. In other words, they deducted Grauberger's attorneys' fees and costs *before* halving the settlement figure pursuant to Cal.Civ.C. § 3045.4. However, the California Supreme Court has held that the common fund theory is *not* available under Cal.Gov.C. § 23004.1, a statute closely related to the HLA. *See City and County of San Francisco v. Sweet*, 12 Cal.4th 105, 48 Cal.Rptr.2d 42, 906 P.2d 1196 (1995). The Court also stated, albeit in dictum, that the common fund theory is not available under the HLA. *See id.* at 122 fn. 11, 48 Cal.Rptr.2d 42, 906 P.2d 1196. Since neither party has contested the amount held in trust, and there has been no briefing on the issue, the court will proceed on the assumption that the amount held in trust was the subject of an agreement between the parties.

tients. *Id.* at ¶¶ 9, 11. She further claims that the Hospital filed the lien in order "to extort payment" on the double billings, knowing that the lien claims "impede and impair settlement." *Id.* at ¶ 10.

Plaintiff's first amended complaint states eight claims for relief: (1) conversion; (2) fraudulent concealment; (3) unfair business practices; (4) breach of contract; (5) violation of public policy; (6) interference with contract; (7) abuse of process; and (8) violation of civil RICO. Plaintiff seeks declaratory and injunctive relief as well as treble damages. Plaintiff also seeks to certify a class consisting of "all other patients of defendants' facilities who are insured by private insurance and to whom treatment is rendered on account of accidental injury and who make claim against third party tortfeasors for recovery." FAC at ¶ 13.[4]

Defendants removed the action to federal court because it involves RICO allegations and is "related to" an ERISA plan. Defendants maintain that the HLA authorizes a hospital that provides services to any person injured in an accident to file a lien, in the amount of the hospital's "reasonable and necessary charges," against any damages recovered by the injured person. They point out that a lien can be placed on damages recovered by "judgment, settlement or compromise." Defendants contend that they are not double billing plaintiff; instead they seek "additional compensation from the third party tortfeasor responsible for the patient's injuries, not from the patient."

### III.

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). "At the summary judgment stage, the district court is not to weigh the evidence or determine the truth of the matter but should only decide whether there is a genuine issue for trial." *Washington v. Garrett*, 10 F.3d 1421, 1428 (9th Cir.1993) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

When the nonmoving party will bear the burden of proof at trial on a dispositive issue, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c) & (e)). The court views all facts and draws all inferences therefrom in the light most favorable to the nonmoving party.

---

4. As discussed further below, the class allegations are not adequately pled. Accordingly, for present purposes the court will rule solely on the individual claims of plaintiff Grauber-

ger. The court will address the class issues when the class allegations have been adequately amended.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If, however, the nonmoving party's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

## IV.

Defendants' argument in support of summary judgment is three-fold: (1) the HLA authorizes the Hospital to impose a lien against the Holden settlement; (2) the Hospital's contract with Blue Shield to provide benefits to Blue Shield members does not limit the Hospital's lien rights; and (3) the Hospital's lien rights exist independently of any debt owed by plaintiff to the Hospital.

█ In addition, defendants argue that plaintiff should not be permitted to question the amount of the Hospital's full charges (and by extension the validity of the lien) because Grauberger relied on those figures to secure the settlement in the Holden litigation. However, the authority cited by defendants is inapposite. In *American Title Ins. Co. v. Lacelaw*, 861 F.2d 224 (9th Cir.1988), the court merely held that a statement in a trial brief could constitute a judicial admission at a later stage in the *same* litigation. Since the plaintiff in *Lacelaw* "did not introduce the statement into evidence or object to the introduction of contradictory testimony," however, the court decided it was not an abuse of discretion to refuse to treat the statement as a binding admission after trial. *Id.* at 227. *First National Ins. Co. v. Federal Deposit Ins. Corp.*, 977 F.Supp. 1051 (S.D.Cal.1997) is also not on point. That case addressed whether a party could be judicially estopped from asserting a position when: (1) the position was adopted in a prior litigation; but (2) the judgment was reversed by the Ninth Circuit. *See id.* at 1058. In *First National* the court explained that judicial estoppel

"bars a party from taking inconsistent positions *in the same. proceeding.*" *Id.* at 1057 (emphasis added). Furthermore, the court explained that the Ninth Circuit follows the rule allowing judicial estoppel only when the inconsistent position was "actually adopted by the first court." *Id.* (quoting *Masayesva for and on Behalf of Hopi Indian Tribe v. Hale*, 118 F.3d 1371, 1381–82 (9th Cir.1997)). In the present case, Grauberger's settlement with Holden can hardly be construed as a judicial adoption of Grauberger's position, regardless of the consistency or inconsistency of that position with the claims she is now asserting. This court therefore rejects defendants' argument concerning judicial admissions.

Plaintiff argues that the Hospital's lien is based on an underlying debt owed by plaintiff to the Hospital, which debt had already been discharged by the payments plaintiff and Blue Shield made to the Hospital. In essence, plaintiff is pointing out that the money the Hospital seeks from the settlement proceeds ultimately comes out of *plaintiff's* recovery, and not out of the tortfeasor's assets or the tortfeasor's insurance company. In other words, since tortfeasor cares only about being released from liability and not about who receives the proceeds from the settlement, the Hospital's lien actually impacts the plaintiff and not the tortfeasor. In plaintiff's view, by seeking additional proceeds from the settlement, the Hospital is charging her the maximum rates for its services, when her health plan had negotiated discounted rates that have been paid in full.

Defendants persistently contend that the Hospital's lien is independent of the debt that plaintiff owed the Hospital for her medical treatments, or the payments made by plaintiff or her insurer. According to defendants, the lien runs against the *tortfeasor*, whereas the prior payments came

from plaintiff and her insurer. In defendant's view, the two are independent such that the Hospital can pursue its lien against the tortfeasor even though payments were made by plaintiff and her insurer. In other words, defendants assert that the lien does *not* secure a debt owed by plaintiff to the Hospital; rather, the lien applies to a recovery from the tortfeasor, as a separate statutory right of the Hospital. To support this argument, defendants cite a number of statutory liens—including Worker's Compensation liens, Medi–Cal Hospital liens, AIDS Vaccine Victims Fund liens, and Asbestos Workers' Account liens—that purportedly exist even in the absence of an underlying debt. Defendants also cite to three brief California trial court decisions that apparently accepted defendants' argument. Finally, defendants argue that the legislative history of a recently enacted statute, SB 1471 codified as California Civil Code section 3040, which limits the lien rights of health plans, medical groups and independent practice associations to the amount actually paid for health care, conclusively shows that *hospital* liens are not limited to the negotiated rate paid by the patient or her insurer.

## V.

▮ The Hospital Lien Act states in relevant part:

> Every person, partnership, association, corporation, public entity, or other institution or body maintaining *a hospital licensed under the laws of this state which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act* not covered by Division 4 (commencing with Section 3201) or Division 4.5 (commencing with Section 6100) of the Labor Code, *shall, if the person has a claim against another for damages on account of his or her injuries, have a lien upon*

*the damages recovered,* or to be recovered, by the person, or by his or her heirs or personal representative in case of his or her death *to the extent of the amount of the reasonable and necessary charges of the hospital* and any hospital affiliated health facility, as defined in Section 1250 of the Health and Safety Code, in which services are provided for the treatment, care, and maintenance of the person in the hospital or health facility affiliated with the hospital resulting from that accident or negligent or other wrongful act.

Cal.Civ.C. § 3045.1 (emphasis added). The HLA further specifies that the lien "shall apply whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise." Cal. Civ.C. § 3045.2. Finally, the Act requires notice to the alleged tortfeasor and his insurer that a lien is being asserted, *see* Cal.Civ.C. § 3045.3, and imposes liability if the tortfeasor or his insurer make payment to the injured party without first paying as much of the lien as can be satisfied by "50 percent of the moneys due under any final judgment, compromise, or settlement agreement after paying any prior liens." Cal.Civ.C. § 3045.4.

The California Supreme Court has concisely restated the essential features of the HLA:

> In California, when a hospital provides care for a patient, the hospital has a statutory lien against any judgment, compromise, or settlement received by the patient from a third person responsible for his or her injuries, or the third person's insurer, if the hospital has notified the third person or insurer of the lien. If the hospital is paid at the time the judgment, compromise, or settlement is disbursed, it is entitled to receive as much of its lien as can be

satisfied out of 50 percent of the recovery.

*Mercy Hospital and Medical Center v. Farmers Insurance Group of Companies,* 15 Cal.4th 213, 215–16, 61 Cal.Rptr.2d 638, 932 P.2d 210 (1997) (citing Cal.Civ.C. §§ 3045.1–3045.4). The Court characterized the lien as "a statutory nonpossessory lien," that is, "a lien that compensates a hospital for providing medical services to an injured person by giving the hospital a direct right to a certain percentage of specific property, i.e., a judgment, compromise, or settlement, *otherwise accruing to that person.*" *Id.* at 217, 61 Cal.Rptr.2d 638, 932 P.2d 210 (emphasis added).[5]

The statute gives a hospital a lien for its services from payments made by a tortfeasor. But it does not say what occurs when the hospital's services have already been paid by the patient or her insurer. And research has disclosed no cases answering the question.

Defendants' contentions here are based upon their argument that their right to the lien established by the statute is entirely independent of their right to further payment from plaintiff for treatment rendered. This court disagrees. First, the language of the HLA does not give hospitals a *cause of action;* it only allows hospitals to place a *lien* on the *patient's* cause of action. And the lien is for the amount of the "reasonable and necessary *charges* " flowing from treatment of the injuries suffered by plaintiff. Cal.Civ.C. § 3045.1

(emphasis added). Those "charges" are necessarily the charges made *to the patient* or her health insurer. In the absence of a right to be paid for such charges, the Hospital has no "amount," reasonable or otherwise, to seek from a third-party judgment, settlement or compromise. The debt owed by plaintiff to the Hospital is the foundation for the Hospital's lien right.

In this case the Hospital's charges to plaintiff and Blue Shield were far in excess of what they actually paid. Defendants concede, however, that plaintiff and her insurer paid their negotiated share in full. This is not disputed.

If the Hospital's lien rights were entirely independent of the debt owed to the Hospital by plaintiff, as defendants urge, the Hospital would be entitled to place a lien for the full amount it billed plaintiff *without deducting what plaintiff and her insurer have already paid.*[6] In other words, if defendants' position were correct, the Hospital could legitimately seek double payment for the same treatment. Nothing in the text or legislative history of the HLA counsels such a result.

An example helps to illustrate. If a wealthy patient were treated for injuries by the Hospital after an accident and paid his bill in full from his own pocket, the Hospital would still be entitled, under defendants' theory, to place a lien on any judgment, settlement or compromise the

---

5. For an informative discussion of hospital lien statutes in the various states, see Carol A. Crocca, "Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery from Tortfeasor Causing Patient's Injuries," 16 A.L.R.5th 262, 1993 WL 837827 (1993).

6. Defendants appear to agree implicitly that this result is illogical. For instance, they factor the amount paid by plaintiff and Blue Shield into their eventual total receipts to

show that they will not receive the full billed amount in any eventuality. *See* Motion at 10:12–17. In other words, even defendants do not regard the amount already paid as wholly independent from the amount recoverable on the lien. Otherwise, there would be no reason for the Hospital to show that it will recover *less* than the billed amount—if defendants are right, under the HLA the Hospital would be entitled to the amount already paid *in addition to* the billed amount.

patient might secure from the tortfeasor, including the amount the patient had already paid. If the lien right were independent of the debt paid by the patient, the Hospital could seek full payment twice—once from the patient, and again from the tortfeasor or his insurer. Moreover, the patient would in effect pay twice—once directly to the Hospital, and again when part of his award from the tortfeasor was taken by the Hospital's lien.

Plaintiff's position is supported not only by the HLA, but also by the Hospital's contract with Blue Shield to provide benefits to Blue Shield members. *See* Steele Decl., Exh. A (the "Hospital Agreement"). Defendants cite the Agreement's language that "Hospital shall not collect or attempt to collect from *Blue Shield's subscribers* for any services covered under the applicable subscriber contract." Hospital Agreement at ¶ 3 (emphasis added). Defendants see in this language no limitation on their right to collect from the *tortfeasor*, who is not a Blue Shield subscriber. However, the ensuing language is directly on point: "Hospital shall be entitled to bill the sub-

scriber *or other responsible party* directly on the basis of customary charges for services rendered *which are not covered under the applicable subscriber agreement.*" *Id.* at ¶ 3 (emphasis added). Since it is undisputed that the services rendered by the Hospital in this case were covered by the Agreement, this language suggests that the Hospital is *not* entitled to bill tortfeasor (the "other responsible party") on the basis of its customary charges.

Defendants attempt to overcome this inconsistency by characterizing the tortfeasor as a "third party payor" from whom the Hospital merely seeks "reimbursement." This argument is unpersuasive on several levels. First, a tort obligor is not typically characterized as a "third party payor," a term of art in medical contracts signifying entities such as insurance companies or MediCare.[7] Second, payment by a tortfeasor is not usually characterized as "reimbursement," another term of art in medical contracts which has to do with the payment arrangements among entities.[8] Finally and most importantly, describing the tortfeasor as a third party payor runs

---

**7.** Although the Hospital Agreement does not expressly define the term "third party payor," it clearly contemplated an institutional payor such as another insurance company or Medicare. *See, e.g.,* Hospital Agreement at ¶ 6.3 ("If the subscriber is concurrently eligible for hospital benefits from another third party payor which is responsible on a 'primary' basis, then Blue Shield as a 'secondary' or 'tertiary' payor will pay for covered hospital services on the basis of the usual billing rate charged the majority of patients at the Hospital[.]"). This understanding is consistent with contracts typical in the healthcare industry. *See, e.g., HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 998 (11th Cir.2001) (citing a PPO contract defining a "Third Party Payor" as "an insurance company, employer, or other business entity which has contracted ... for medical services and/or surgical services rendered by participating physicians ... and Hospital Services rendered by Preferred Hospitals ..."); *A–1 Ambulance Service, Inc. v. California,* 202

F.3d 1238, 1242 (9th Cir.2000) (describing the primary terms and conditions of an ambulance services contract, including "the types and amounts of charges permitted to Medicare and other third-party payors."). Moreover, California courts have decided that the statutory term "third party payor" does not encompass a third party tortfeasor. *See Palumbo v. Myers,* 149 Cal.App.3d 1020, 1030–1034, 197 Cal.Rptr. 214 (1983) ("[W]e hold that a settling third party tortfeasor is not a 'third party payer' as the term is used in Welfare and Institutions Code section 14019.4."). In sum, there is nothing to support defendants' position that the Hospital Agreement contemplates a third party tortfeasor as a third party payor.

**8.** *See, e.g., Arizona v. Maricopa County Medical Soc.,* 457 U.S. 332, 338, 102 S.Ct. 2466, 73 L.Ed.2d 48 (1982) (discussing price-fixing in physician reimbursement schedules as a potential antitrust violation).

directly counter to defendants' argument overall. Defendants cannot assert that the lien has nothing to do with the debt owed by plaintiff or her payors and also ask that the court regard the tortfeasor as one of plaintiff's payors. It is clear under the Hospital Agreement that the amount payable for covered services is limited to the negotiated rates, which defendants already accepted as payment in full on plaintiff's account.

Defendants argue that they are not seeking money from *plaintiff* but only from *tortfeasor*. While it is true that any eventual award will be paid by tortfeasor or her insurer, the amount subject to the lien would "otherwise accrue" to plaintiff. *See Mercy Hospital,* 15 Cal.4th at 217, 61 Cal.Rptr.2d 638, 932 P.2d 210 ("a judgment, compromise, or settlement, *otherwise accruing to that person* [i.e., the injured person]") (emphasis added). Plaintiff, not the tortfeasor, is the one who loses money when the lien is asserted. Thus, in all but the most legalistic sense, the lien runs against plaintiff. *See Olszewski v. ScrippsHealth,* 88 Cal. App.4th 1268, 1281, 107 Cal.Rptr.2d 187, 196–97 (2001). This violates the Hospital Agreement. *See* Hospital Agreement at ¶ 3 ("Surcharges for covered services are prohibited.").

In sum, neither the HLA nor the Hospital Agreement can be reasonably construed as defendants would have them. If, as here, the Hospital (by prior contract or subsequent agreement) has *agreed* to accept and *did* accept less than it billed to the patient, then there is no remaining "charge" to take from the patient's recovery from a third party. To allow the Hospital to charge the patient again through the backdoor (*i.e.,* by reducing her recovery from the tortfeasor), would be contrary to the Hospital Agreement.

The legislative history of the HLA reveals that the primary targets of the legis-lation were uninsured patients who received treatment, recovered money from the person who caused the accident or his insurer, and then did not pay the treating hospital for its reasonable expenses. *See generally* Pl. Req. for Jud. Not. As an analysis prepared for the Assembly Judiciary Committee states, the HLA was intended to give hospitals a way to recoup some of the expense they incur in treating emergency patients without regard to their uninsured status or inability to pay:

> The author states that hospitals, including those that operate trauma centers, treat accident victims, many of whom are uninsured. Many hospitals have problems keeping their emergency rooms open because a large proportion of accident victims are uninsured. The purpose of this bill is to make it possible for hospitals to seek payment, particularly from insurance companies whose clients have accidentally or negligently hurt another person, resulting in that injured person's hospitalization.

Pl. Req. for Jud. Not., Exh. B3. As one court stated in a similar case, involving an analogous Texas statute: "The statute was clearly not intended to overcompensate hospitals that accept patients who do have the ability to pay, nor to provide a windfall for hospitals who feel aggrieved by the circumscription of hospital charges by insurance plans." *Satsky v. United States,* 993 F.Supp. 1027, 1029 (S.D.Tex.1998).

Defendants ask the court to interpret the text and legislative history of a different statute, SB 1471 codified as California Civil Code section 3040, to preclude plaintiff's argument that the statutory lien rights available under the HLA are limited by the Hospital Agreement. The court declines this invitation. Subsequent legislation is, at best, an unreliable gauge of legislative intent. *See United States v. Price,* 361 U.S. 304, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960) (recognizing that "the

views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."). Moreover, the fact that section 3040 expressly places no limit on a hospital's lien rights says nothing about whether the lien right was *already* limited under the HLA. For similar reasons, the court declines to place great weight on the existence of other statutory liens that purportedly exist in the absence of an underlying debt. The unique nature of a hospital lien under the HLA makes such comparisons questionable. Finally, the court declines to consider the unpublished state trial court decisions cited by defendants. *See* Def. Reply, Exhs. A & B; Def. Req. for Jud. Not., Exh. A. Trial court decisions are not binding authority on the law of California, and the courts of this circuit frown upon citation to unpublished materials. *See* Ninth Circuit Rule 36–3.

For all of the foregoing reasons, the court concludes that the HLA does not authorize the Hospital to place a lien on plaintiff's recovery from the third party tortfeasor. Plaintiff and her insurer have paid the Hospital services in full, so there is no unsatisfied "charge" that the Hospital could seek from plaintiff's settlement with the tortfeasor.

## VI.

Having concluded that plaintiff's position with respect to the law is correct, the court must now address the appropriate relief. As mentioned above, plaintiff has pled this case as a class action. *See* FAC at ¶¶ 13–15. However, the class allegations were made in a state court complaint that has not been amended to conform to federal pleading practice.[9] Accordingly, the court will grant provisional relief based on plaintiff's individual claims, and allow plaintiff the opportunity to amend the class claims if she so chooses. *See Wright v. Schock*, 742 F.2d 541, 543 (9th Cir.1984) ("Under the proper circumstances—where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a *motion for summary judgment* before it decides the [class] certification issue.").

Further, the parties have not had an opportunity to brief the court on how appropriate declaratory or injunctive relief might be crafted. Since these issues are obviously intertwined with the question of class certification, the court defers decision on these issues until the parties have had a chance to meet and confer to propose further action.

For the reasons stated above, the court GRANTS plaintiff's motion for partial summary judgment and DENIES defendants' motion for summary judgment. The $31,747.74 held in trust pending this litigation shall be released to plaintiff. The parties are to meet and confer regarding the class allegations and requests for declaratory and injunctive relief. A status conference will be held on July 27, 2001 at 11:00 a.m.

**IT IS SO ORDERED.**

9. For example, Rule 23(a) of the Federal Rules of Civil Procedure requires that a class be "so numerous that joinder of all members is impracticable." However, plaintiff has only vaguely asserted that the number of class members is "extremely large." *See* FAC at ¶ 14. Furthermore, plaintiff has failed to sufficiently allege that: (1) there are questions of law or fact common to the class; (2) her claims are typical of the class; or (3) she will fairly and adequately represent the interests of the class. *See generally* Fed.R.Civ.P. 23(a). Plaintiff has also failed to mention which of the Rule 23(b) class actions she seeks to maintain.