[No. E040923. Fourth Dist., Div. Two. Mar. 22, 2007.]

COUNTY OF SAN BERNARDINO, Plaintiff and Appellant, v.
MARTIN ZAVALA CALDERON et al., Defendants and Respondents.

COUNSEL

Dennis E. Wagner, Interim County Counsel, and Paul St. John, Deputy County Counsel, for Plaintiff and Appellant.

Perona, Langer, Beck, Lallande & Serbin, Ronald Beck and Ellen R. Serbin for Defendants and Respondents.

OPINION

**McKINSTER, Acting P. J.**—The Hospital Lien Act (HLA), which appears at Civil Code sections 3045.1 through 3045.6, provides that a hospital which provides emergency and ongoing care to a person injured by accident or through the negligent or wrongful conduct of another has a statutory lien, in the amount of the reasonable and necessary charges of the hospital, against any judgment, settlement or compromise received by the patient from a third person who is responsible for his or her injuries. (Civ. Code, §§ 3045.1, 3045.2.) (All further statutory citations refer to the Civil Code unless another code is specified.)

In this case, the County of San Bernardino (hereafter the County) provided medical care to Martin Zavala Calderon after he was injured in a car accident in which the other driver was at fault. The parties concur that the hospital has a valid lien for the reasonable value of its services to Calderon. The principal issue on appeal is whether the County's lien for services rendered beginning on July 14, 2003, notice of which was given to the responsible third party on November 13, 2003, takes priority over a lien for attorney fees which was created by contract between Calderon and his attorney on July 18, 2003. In a trial on the County's action for declaratory relief based on stipulated facts, the trial court held that the hospital lien was created on November 13, 2003, upon the giving of notice. Because the lien for attorney fees was created before the hospital's lien, the court determined that the attorney's lien has priority over the hospital lien.

The construction of a statute and its applicability to undisputed facts are questions of law which we review de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956]; *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611 [38 Cal.Rptr.2d 150, 888 P.2d 1279].) We conclude that the HLA does not provide that hospital liens have first priority over competing liens regardless of the time of creation of the lien, and that the hospital lien was not created until notice was given on November 13, 2003. Accordingly, we will affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

The parties stipulated to the following facts:

Calderon received medical treatment at the County's Arrowhead Regional Medical Center for injuries he suffered in an automobile accident on July 14, 2003. The other driver was at fault in the accident. The reasonable value of the medical services provided to Calderon is $113,104.

On July 18, 2003, Calderon entered into a retainer agreement with the Law Offices of Larry H. Parker, Inc. (Parker), to represent Calderon in his claim for damages against the driver who was at fault in the accident. The retainer agreement provided that Parker would have a lien on any settlement or judgment. The reasonable value of Parker's services is $50,020, plus costs advanced by Parker in the amount of $999.14.

On November 13, 2003, the County notified Calderon and Parker of its lien for the medical services it rendered in connection with the July 14 accident.

On June 29, 2005, Calderon received a settlement in the amount of $150,060 from the other driver's insurance company. If the County's lien has priority, it will receive 50 percent of the settlement, or $75,030. If Parker's lien has priority, the County will receive only $49,520.42, according to the parties' calculations.

## ANALYSIS

### CREATION AND PRIORITY OF LIENS UNDER THE HLA

As pertinent, the HLA provides as follows:

"Every person, partnership, association, corporation, public entity, or other institution or body maintaining a hospital licensed under the laws of this state which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act not covered by Division 4 (commencing with Section 3201) or Division 4.5 (commencing with Section 6100) of the Labor Code, shall, if the person has a claim against another for damages on account of his or her injuries, *have a lien upon the damages recovered, or to be recovered,* by the person, or by his or her heirs or personal representative in case of his or her death to the extent of the amount of the reasonable and necessary charges of the hospital and any hospital affiliated health facility, as defined in Section 1250 of the Health and Safety Code, in which services are provided for the treatment, care, and maintenance of the person in the hospital or health facility affiliated with the hospital resulting from that accident or negligent or other wrongful act." (§ 3045.1, italics added.)

"*A lien shall not be effective, however, unless a written notice* containing the name and address of the injured person, the date of the accident, the name and location of the hospital, the amount claimed as reasonable and necessary charges, and the name of each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries

received, *is delivered or is mailed* by registered mail, return receipt requested, postage prepaid, to each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries sustained *prior to the payment of any moneys to the injured person, his attorney, or legal representative as compensation for the injuries.* [¶] The hospital shall, also, deliver or mail by registered mail, return receipt requested, postage prepaid, a copy of the notice to any insurance carrier known to the hospital which has insured the person, firm, or corporation alleged to be liable to the injured person against the liability. The person, firm, or corporation alleged to be liable to the injured person shall, upon request of the hospital, disclose to the hospital the name of the insurance carrier which has insured it against the liability." (§ 3045.3, italics added.)

"Any person, firm, or corporation, including, but not limited to, an insurance carrier, making any payment to the injured person, or to his or her attorney, heirs, or legal representative, for the injuries he or she sustained, after the receipt of the notice as provided by Section 3045.3, without paying to the association, corporation, public entity, or other institution or body maintaining the hospital the amount of its lien claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys due under any final judgment, compromise, or settlement agreement after paying any prior liens shall be liable to the person, partnership, association, corporation, public entity, or other institution or body maintaining the hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person." (§ 3045.4.)

The County contends that its lien was created, pursuant to section 3045.1, immediately upon the rendering of services to Calderon. Calderon and Parker contend that, pursuant to section 3045.3, a lien is created only when the hospital gives notice to the responsible party.

▮ In interpreting a statute, our function is to ascertain the intent of the Legislature in enacting the statute and to effectuate the purpose of the statute. We begin with the statute's language, giving its words their usual and ordinary meaning, construing them in context. (*People v. Johnson* (2002) 28 Cal.4th 240, 244 [121 Cal.Rptr.2d 197, 47 P.3d 1064].) If the statutory language is unambiguous, we presume that the Legislature meant what it said, and construction is unnecessary. (*Ibid.*) If the statutory language permits more than one reasonable interpretation, however, the court may consider various extrinsic aids to interpretation. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].) Ultimately, the court " ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than

defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*Ibid.*)

■ The HLA is rife with ambiguity (see *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 220–223 (maj. opn. of Brown, J.), 223–231 [61 Cal.Rptr.2d 638, 932 P.2d 210] (dis. opn. of Baxter, J.) (*Mercy Hospital*)), and its provisions with respect to the creation of the lien are ambiguous as well. Unlike some other statutes which provide for liens (see, e.g., Code Civ. Proc., §§ 491.410, 708.410; *Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172 [121 Cal.Rptr.2d 532]), the HLA does not explicitly state that the lien is created only when notice is given. Rather, it states that the lien is not "effective" unless written notice is given before any payment has been made to the injured person, his attorney, or legal representative as compensation for his injuries. (§ 3045.3.) For the reasons which follow, we conclude that the Legislature intended that liens under the HLA come into existence only upon the giving of notice as provided for in section 3045.3.

■ As construed by the California Supreme Court, the purpose of the HLA is "to secure part of the patient's recovery from liable third persons to pay his or her hospital bill, while ensuring that the patient retain[s] sufficient funds to address other losses resulting from the tortious injury." (*Mercy Hospital, supra,* 15 Cal.4th at p. 217.)[1] To further this purpose, the HLA provides the hospital with a direct right to payment by the third party, but only if the hospital gives notice to the third party and his or her insurer before funds have been disbursed. The act also provides that the lien secures payment of the hospital's charges only up to 50 percent of the settlement or judgment proceeds. (§ 3045.4; *Mercy Hospital, supra,* at pp. 219–223.) The court held that the lien and the remedies provided by the HLA are not exclusive, however, and the hospital may proceed directly against the injured person for payment of any balance which is not paid under the HLA's provisions. (*Mercy Hospital, supra,* at p. 217.)

■ In *Newton v. Clemons* (2003) 110 Cal.App.4th 1 [1 Cal.Rptr.3d 90], this court held, based on *Mercy Hospital,* that a hospital lien created pursuant to the HLA operates only against the responsible third party and his legal representatives and insurers; it does not create a lien effective against the

---

[1] In *Mercy Hospital,* the California Supreme Court was construing an earlier version of section 3045.1. At the time pertinent to that case, section 3045.1 provided for a hospital lien only for services rendered during a 72-hour emergency "window," and a $100 "floor" was deducted before calculating the 50 percent of the recovery which was subject to the lien. (Civ. Code, former §§ 3045.1, 3045.4.) In 1992, the act was amended to expand the lien's scope to include " 'emergency and ongoing medical or other services,' " and to delete the $100 floor. (*Mercy Hospital, supra,* 15 Cal.4th at p. 218, fn. 3.) The differences between the former and current statutory scheme have no effect on the issue before us.

patient, to secure payment of any amounts owing to the hospital which remain unpaid after the third party funds have been disbursed in accordance with the HLA's provision that the hospital is to be reimbursed only to the extent possible by exhausting no more than 50 percent of the settlement or judgment. (*Newton v. Clemons*, at pp. 9, 16–18; § 3045.4.) Because the lien applies only to a third party payor, it is reasonable to conclude that in enacting section 3045.3, the Legislature intended to provide that the lien arises only when notice has been given: Unlike the injured person, neither the responsible party nor his or her representative or insurer would be aware that the hospital's charges remained unpaid, in the absence of notice from the hospital. Thus, although the HLA does not expressly state that the lien arises only upon the giving of notice, we infer that the Legislature so intended.

The County points out that to say that the lien is not "effective" prior to notice being given does not necessarily mean that the lien does not exist; rather, it may also mean that the lien cannot be enforced prior to notice being given. It analogizes to the attorney's contractual lien for attorney fees: That lien is created upon the execution of the retainer agreement, but it cannot be enforced until after the matter which is the subject of the retainer agreement has been concluded. (*Carroll v. Interstate Brands Corp.*, supra, 99 Cal.App.4th at pp. 1172–1173.) Thus, the attorney's lien exists, but is not effective until other events have taken place. We agree that the Legislature's use of the word "effective" is ambiguous. However, the statutory language, taken as a whole, supports our interpretation. Stripped of some of its verbiage, section 3045.3 provides, "A lien shall not be effective, however, unless a written notice containing the name and address of the injured person, the date of the accident, the name and location of the hospital, the amount claimed as reasonable and necessary charges . . . is delivered or is mailed by registered mail . . . prior to the payment of any moneys to the injured person, his attorney, or legal representative as compensation for the injuries." (§ 3045.3.) By providing that the lien is "effective" only upon notice, the statute implies that prior to delivery or mailing of the required notice, the hospital has only an inchoate right to a lien; it does not have an effective lien. Furthermore, section 3045.5 provides that the hospital may "enforce" its lien by filing an action, within one year of the date the settlement or judgment proceeds were paid to the injured person, against the entity "making the payment and to whom such notice was given as herein provided." (§ 3045.5.) Thus, the act itself appears to distinguish between "effectiveness" and "enforceability."

The County also contends that because the HLA was intended to provide hospitals with a "direct right" to compensation, that right accrues when emergency services are provided. We agree that the hospital has a direct right to compensation out of settlement proceeds (*Mercy Hospital*, supra, 15 Cal.4th at p. 217), but that does not answer the question at issue, i.e., when that right

arises. There is no reason that the Legislature may not provide that the hospital's right to obtain a lien on third party funds arises only upon notice to the third party.

The County asserts that the California Supreme Court has "repeatedly" interpreted and applied the HLA so that hospital liens had priority over liens in favor of a patient's attorney. It cites *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105 [48 Cal.Rptr.2d 42, 906 P.2d 1196] (*Sweet*) and *Mercy Hospital, supra*, 15 Cal.4th 213. However, neither case addresses the question of priority of liens under the HLA or determines when a hospital's lien is created under the HLA. In fact, neither case discusses attorney fee liens at all.

In *Sweet*, the court decided that a hospital's lien on the proceeds of a judgment recovered by the injured patient against the tortfeasor, pursuant to Government Code section 23004.1, is not subject to equitable reduction for a portion of the attorney fees incurred by the injured patient in obtaining the judgment. (*Sweet, supra*, 12 Cal.4th at p. 108.) It held that in the absence of express statutory language to the contrary, it would presume that the Legislature intended the normal statutory allocation of responsibility for the costs of litigation—i.e., that each party bears its own costs, as provided for in Code of Civil Procedure section 1021—to apply to Government Code section 23004.1 liens. It held that this presumption also applies to hospital liens created under the HLA. (*Sweet*, at p. 122 & fn. 11.) Nowhere in *Sweet* did the court address the issues now before us.

In *Mercy Hospital, supra*, 15 Cal.4th 213, the issue before the court was "what amount [a] hospital [which has perfected a lien under the HLA] is entitled to when it is not paid at the time the patient's recovery against the third person's insurer is disbursed." (*Id.* at pp. 215–216.) The opinion does not address the relative priority of the hospital's lien and a lien in favor of the injured patient's attorney or when a hospital's lien is perfected under the HLA.

Finally, the County contends that recognition of the lien immediately upon the rendering of services would be consistent with public policy favoring medical liens. We agree that one purpose of the HLA is to ensure payment for emergency medical services. However, the HLA also serves to balance that need with the need of the patient to have funds available to address other losses resulting from an accidental injury. (*Mercy Hospital, supra*, 15 Cal.4th at pp. 217–218.)

The County cites *Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039 [119 Cal.Rptr.2d 416] to assert that public policy

mandates that providers of emergency medical care be afforded a streamlined means of obtaining compensation. *Pangborn Plumbing* does not address the time of creation of a lien under the HLA, however. Rather, that case involves priorities between the holder of a judgment lien and a lien for attorney fees. (97 Cal.App.4th at p. 1043.) We agree, though, with the general proposition that public policy favors a streamlined means of compensation for providers of emergency medical services. However, by providing for a lien on settlement or judgment proceeds and a direct right of action against the third party, his legal representative or insurer (§§ 3045.1, 3045.5), the HLA does exactly that, regardless of when the lien actually arises. Moreover, as the *Pangborn Plumbing* court acknowledges, public policy also favors enforcement of consensual liens for payment of those who provide other services, such as attorneys. (*Pangborn Plumbing*, at p. 1052.) The existence of policies favoring payment of both hospitals and the attorneys who help make it possible for hospitals to obtain payment in cases such as this one does nothing to answer the question we address here. In any event, the requirement that the hospital give notice to the third party payor in order to perfect its lien does not unduly burden the hospital's right to payment and thus does not contravene that policy.

■ Thus, we agree with the trial court that the County's lien was created on November 13, 2003, when it gave notice of its claim as required in section 3045.3. The remaining question is whether it nevertheless takes priority over Parker's lien, which, as the parties concur, was created on July 18, 2003, when Parker and Calderon entered into the retainer agreement. (*Carroll v. Interstate Brands Corp.*, supra, 99 Cal.App.4th at p. 1172.)

■ With respect to competing liens, one of which is created by contract and the other of which is created by statute, the text of the statute prevails if it establishes the priority to be accorded to the statutory lien. (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 534 [179 Cal.Rptr. 902, 638 P.2d 1299].) If the statute is silent, the rule of priority set forth in section 2897 applies. (*Cetenko v. United California Bank*, at p. 534.) That section provides, "Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia."[2] (§ 2897.)

■ The HLA does not state that a hospital lien takes priority over competing liens. On the contrary, section 3045.4 expressly recognizes that other liens *may* take priority. In pertinent part, that section provides that any entity which makes payment to the injured person must first pay the hospital

[2] Bottomry and respondentia involve liens on ships and on their cargo, respectively. (Black's Law Dict. (8th ed. 2004) pp. 197, 1338.)

as much of its reasonable costs as can be satisfied out of 50 percent of the proceeds "after paying any prior liens." (§ 3045.4.) In contrast, Government Code section 23004.1 provides that a county's right of action against a third party for reimbursement for medical care provided to a person injured by the third party's tort continues as a "first lien" on any judgment while the injured party or his survivor prosecute an action against the party responsible for the injury. (Gov. Code, § 23004.1, subds. (a) & (b); *Newton v. Clemons, supra,* 110 Cal.App.4th at p. 9.)[3] Where a statute contains a given provision, " 'the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' [Citation.]" (*In re Jennings* (2004) 34 Cal.4th 254, 273 [17 Cal.Rptr.3d 645, 95 P.3d 906].) Thus, the fact that the Legislature provided for a lien with first priority in Government Code section 23004.1, but omitted any such provision from the HLA indicates that the omission was intentional. (*In re Jennings, supra,* at p. 273.) We conclude that by failing to afford hospital liens "first priority" and by expressly acknowledging that other liens may take priority over hospital liens, the Legislature expressed its intent to apply the time-based priority set forth in section 2897 to liens arising under the HLA. Therefore, because Parker's lien was created on July 18, 2003, and the hospital's lien was created on November 13, 2003, Parker's lien has priority.

## CIVIL CODE SECTION 3333.4

Section 3333.4 provides, in part, that a person who is injured while using or operating a vehicle, may not recover noneconomic damages to compensate for pain, suffering, inconvenience and the like, if "[t]he injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2).) Calderon was uninsured at the time of the accident. The County contends that "[i]f the 50% limit [provided for in section 3045.4] is applied, Calderon will receive funds that are not attributable to his economic losses." Therefore, the County contends that the 50 percent limit on its lien should be waived in order to avoid an unlawful windfall to Calderon.

We do not pretend to understand the reasoning underlying this argument. However, we need not address it, because there is no support in the record for the contention that Calderon's settlement included any noneconomic damages. The stipulated facts on which the parties submitted the matter to the trial court contain no reference to noneconomic damages, and there is no reference elsewhere in the record to noneconomic damages having been

---

[3] Government Code section 23004.1 does not apply to this action, because the lien it provides for expressly applies only to proceeds from a judgment; it does not apply to settlement proceeds. (*Newton v. Clemons, supra,* 110 Cal.App.4th at p. 9.)

sought or included in the settlement. In the absence of evidence that Calderon's settlement included noneconomic damages, section 3333.4 can have no application. Thus, the County has not met its burden of demonstrating error. (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [87 Cal.Rptr.2d 132, 980 P.2d 846].)

## DISPOSITION

The judgment is affirmed. Defendants and respondents Martin Zavala Calderon and the Law Offices of Larry H. Parker, Inc., are awarded costs on appeal.

Richli, J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2007, S152190. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.