[No. E044892. Fourth Dist., Div. Two. June 4, 2009.]

WESTON REID, LLC, Plaintiff and Appellant, v.
AMERICAN INSURANCE GROUP, INC., Defendant and Respondent.

COUNSEL

Law Offices of Dilip Vithlani and Dilip M. Vithlani for Plaintiff and Appellant.

Crandall, Wade & Lowe, James L. Crandall, Edwin B. Brown and Richard W. Miller for Defendant and Respondent.

---

OPINION

**MILLER, J.**—Plaintiff and appellant Weston Reid, LLC, appeals after the trial court sustained a demurrer without leave to amend and dismissed its complaint against defendant and respondent American Insurance Group, Inc. (AIG). AIG's insured, Karen Sheets (Sheets), was injured in an automobile accident and medical care was provided by Mercy General Hospital (Mercy). Mercy had claims under the Hospital Lien Act (HLA) (Civ. Code, §§ 3045.1–3045.6) for a lien on any recovery Sheets might obtain from the tortfeasor. Mercy assigned its HLA claims to plaintiff. Plaintiff filed this action against *Sheets's* insurer, AIG, for alleged negligence, breach of fiduciary duty, and unfair business practices. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

Because the matter arises upon demurrer, we take the essential facts from the operative pleading, the first amended complaint.[1] We accept as true all properly pleaded allegations of material fact, but not deductions, contentions, or conclusions of law or fact. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

The automobile accident occurred on February 12, 2005. Sheets was injured in a collision with William West. As a result of the accident, Sheets suffered severe injuries and was treated at Mercy. The cost of Sheets's treatment exceeded $400,000. Mercy assigned its HLA rights to plaintiff.

Plaintiff's complaint alleged that Sheets sought payment or reimbursement for her medical treatment from AIG, her insurer. On April 13, 2005, plaintiff mailed a "Notice of Statutory Lien" to AIG. Plaintiff alleged that, "in the past, [plaintiff has] sent lien notices to AIG at the same address as it

---

[1] AIG has asked this court to take judicial notice of the original complaint. We reserved ruling for determination with the appeal. As plaintiff points out, the original complaint was superseded by the first amended complaint, and there appears to be no reason to refer to the original complaint. We therefore now deny the request for judicial notice.

forwarded the Sheets lien and that AIG has in the past acknowledged receipt of such liens and has in fact honored such liens."

Plaintiff alleged that the "custom and practice in the personal injury context" is that, once a notice of lien is filed, the insurance company notifies the lien holder of any resolution, settlement or disbursement of funds. Because of this customary practice, after mailing its notice of lien, plaintiff "then awaited resolution of the matter between Sheets and West from AIG as the insurer for Sheets."

Plaintiff inquired of AIG in May or June 2006 about the status of its lien. Then, plaintiff learned for the first time that AIG had paid out $50,000 to Sheets under the uninsured motorist coverage in Sheets's automobile insurance policy. AIG made the payment a year earlier, in May 2005, without notifying plaintiff of the payment. Plaintiff averred that AIG had a statutory obligation to notify plaintiff of the payment in the Sheets matter. It further averred that AIG purposefully withheld the information about the resolution from plaintiff. Because of plaintiff's reliance on the industry custom, it could not reasonably have discovered the resolution until June 2006.

After plaintiff learned of the resolution, it demanded payment of its HLA claim. AIG repeatedly asked for more time to consult with its legal counsel, and thus further delayed any payment to plaintiff. AIG's assurances that it was consulting legal counsel on the claim delayed plaintiff's action from June to November 2006.

As to the cause of action for negligence, plaintiff alleged that AIG owed it a duty of care to inform plaintiff that AIG had paid out $50,000 to Sheets for medical care provided by Mercy. Plaintiff had the statutory lien and had given AIG notice of the lien. Thus, plaintiff alleged that AIG had a duty under the statute to disburse a maximum of 50 percent of the funds to plaintiff, the lien holder. AIG breached the duty by failing to notify plaintiff of the payment, and failing to disburse to plaintiff the statutory amount of its lien. AIG refused to honor the lien and refused to disburse any funds to plaintiff.

As to breach of fiduciary duty, plaintiff alleged that, "by virtue of receipt of the notice of statutory lien, [AIG] became a fiduciary of the plaintiff and held the funds under its insurance policy for medical care . . . in trust for disbursement to plaintiff." Plaintiff justifiably relied on the statutory notice provisions, but AIG failed in its obligation to inform plaintiff of the resolution of Sheets's claim. By failing to give notice to plaintiff, and by failing to disburse moneys to plaintiff, AIG breached its fiduciary duties to plaintiff. Plaintiff was therefore damaged in the amount of $25,000, or one-half of the resolution amount. Plaintiff alleged that AIG acted "with reckless disregard

for the rights of the plaintiff," and that AIG's refusal to give notice and refusal to pay were intentional, malicious, oppressive and in bad faith, giving rise to exemplary damages.

As to unfair business practices, plaintiff alleged that AIG owed plaintiff a duty under the HLA to disburse funds to plaintiff, in an amount not to exceed 50 percent of the funds paid to Sheets. By breaching the statutory lien, AIG was alleged to have engaged in unfair business practices under Business and Professions Code section 17200 et seq. AIG failed to notify plaintiff of the settlement or compromise, AIG continued to refuse to pay plaintiff despite repeated demands, and AIG's conduct was unfair because it repeatedly asked for more time to consult with counsel, thereby delaying any recovery by plaintiff.

Plaintiff filed its complaint on February 23, 2007. AIG demurred to the original complaint and plaintiff filed the first amended complaint on June 4, 2007.

AIG again demurred, arguing among other things that plaintiff's claim was not a valid lien under the HLA, inasmuch as the HLA provided a lien for recovery of medical care costs from the tortfeasor, and not from the accident victim's own first party insurance.

The trial court sustained the demurrer without leave to amend. The court dismissed plaintiff's complaint, and plaintiff appeals from that judgment.

## DISCUSSION

### A. *Standard of Review*

We review an order sustaining a demurrer without leave to amend under well-established rules: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

In addition, the issues presented here turn largely on the proper construction of the HLA. We review questions of statutory construction independently. (*Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].)

### B. *The Trial Court Properly Sustained the Demurrer*

Plaintiff attempted to allege causes of action for negligence, breach of fiduciary duty (bad faith), and unfair business practices. All three causes of action were based on the same conduct and the same facts, and all three were based upon the notion that AIG had not made a statutorily required payment under the HLA.

AIG's position was that the HLA was wholly inapplicable in this context, that is, AIG was the first party insurer of the patient, by whom the medical costs were incurred, and not the insurer of West as the third party tortfeasor who caused the injuries. Plaintiff argues that the patient's uninsured motorist coverage here functions as if AIG were the third party tortfeasor's insurer. This presents an issue of first impression concerning the proper interpretation of the HLA.

When interpreting statutes we employ well-settled principles of construction. The fundamental task of the court is to ascertain and give effect to the intent of the Legislature. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].) "In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. . . . The words of the statute must be construed in context, keeping in mind the statutory purpose . . . . Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Civil Code section 3045.1 provides in relevant part that a hospital "which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act . . . shall, if the person has *a claim against another for damages on account of his or her injuries*, have a lien upon the damages recovered, or to be recovered, by the person, . . . to the extent of the amount of the reasonable and necessary charges of the hospital . . . resulting from that accident or negligent or other wrongful act." (Italics added.)

Civil Code section 3045.2 provides, "The lien shall apply whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise."

Civil Code section 3045.3 deals with the proper notices of the lien: "A lien shall not be effective, however, unless a written notice containing the name and address of the injured person, the date of the accident, the name and location of the hospital, the amount claimed as reasonable and necessary charges, and the name of each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries received, is delivered or is mailed by registered mail, return receipt requested, postage prepaid, *to each person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries sustained* prior to the payment of any moneys to the injured person, his attorney, or legal representative as compensation for the injuries.

"The hospital shall, also, deliver or mail by registered mail, return receipt requested, postage prepaid, a copy of the notice *to any insurance carrier* known to the hospital *which has insured the person, firm, or corporation alleged to be liable to the injured person against the liability*. The person, firm, or corporation alleged to be liable to the injured person shall, upon request of the hospital, disclose to the hospital the name of the insurance carrier which has insured it against the liability." (Italics added.)

Civil Code section 3045.4 provides for liability if funds are disbursed without paying the lien: "Any person, firm, or corporation, including, but not limited to, an insurance carrier, making any payment to the injured person, or to his or her attorney, heirs, or legal representative, for the injuries he or she sustained, after the receipt of the notice as provided by Section 3045.3, without paying to the association, corporation, public entity, or other institution or body maintaining the hospital the amount of its lien claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys due under any final judgment, compromise, or settlement agreement after paying any prior liens shall be liable to the person, partnership, association, corporation, public entity, or other institution or body maintaining the hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person."

In *County of San Bernardino v. Calderon* (2007) 148 Cal.App.4th 1103 [56 Cal.Rptr.3d 333], this court explained, "the purpose of the HLA is 'to secure part of the patient's recovery from liable third persons to pay his or her hospital bill, while ensuring that the patient retain[s] sufficient funds to address other losses resulting from the tortious injury.' [Citation.]" (*Id.* at

p. 1109, fn. omitted, quoting *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 217 [61 Cal.Rptr.2d 638, 932 P.2d 210] (*Mercy Hospital*).) In another case, this court elaborated the statutory purposes and the functioning of the HLA: "Civil Code section 3045.1 creates a 'statutory nonpossessory lien . . . in favor of a hospital against third persons liable for the patient's injuries.' " (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 13 [1 Cal.Rptr.3d 90], again quoting *Mercy Hospital*, at p. 217.)

■ " 'A lien is a charge imposed in some mode other than by a transfer in trust upon specific property by which it is made security for the performance of an act.' [(Civ. Code, § 2872; see also Code Civ. Proc., § 1180.)] A lien may be created by contract, or by operation of law. 'There are various types of personal property liens; the one at issue in this case [i.e., a hospital lien] is a statutory nonpossessory lien. Such liens are generally nonconsensual, and enacted "to compensate a person who, pursuant to express or implied contract, furnishes services or materials in the improvement of a chattel, or stores it." [Citation.]' The hospital lien act 'compensates a hospital for providing medical services to an injured person by giving the hospital a *direct right to a certain percentage of specific property*, i.e., a judgment, compromise, or settlement, otherwise accruing to that person.' (Italics added.) [¶] Civil Code section 3045.4 establishes the 'certain percentage' of the judgment or settlement amounts to which the lien applies: 'Any person, firm, or corporation, including, but not limited to, an insurance carrier, making any payment to the injured person . . . , for the injuries he or she sustained, after the receipt of the notice [of the hospital lien], without paying to the [hospital] the amount of its lien claimed in the notice, *or so much thereof as can be satisfied out of 50 percent of the moneys due* under any final judgment, compromise, or settlement agreement after paying any prior liens shall be liable to the . . . [hospital] *for the amount of its lien* claimed in the notice *which the hospital was entitled to receive* as payment for the medical care and services rendered to the injured person.' (Italics added.)" (*Newton v. Clemons, supra*, 110 Cal.App.4th at pp. 13–14, fns. omitted.)

■ The hospital lien arises because of and applies to a payor fund created by the liability of a third party tortfeasor for the injuries that gave rise to the needed medical services. The lien does not come into existence until the hospital (or, as here, its assignee) files the required notice of lien. The notice of lien must be given to "each person, firm, or corporation known to the hospital and *alleged to be liable to the injured person for the injuries sustained*," and also to "any insurance carrier known to the hospital which has *insured the person, firm, or corporation alleged to be liable* to the injured person against the liability." (Civ. Code, § 3045.3.)

Here, plaintiff sent the notice only to AIG. AIG argues that it is not a "person, firm, or corporation . . . liable to the injured person for the injuries

sustained." (Civ. Code, § 3045.3.) West, if anyone, was the person responsible for Sheets's injuries. Neither is AIG the insurance carrier, "which has insured the person, firm, or corporation alleged to be liable." (*Ibid.*) AIG is not West's insurer. Rather, AIG is the insurer of the injured patient—Sheets.

AIG thus contends that the HLA, by its own terms, requires that the lien must be served upon the third party tortfeasor and the tortfeasor's insurer. Because AIG is neither West nor West's insurer, it had no obligation to respond to plaintiff's notice of lien; the HLA simply did not apply.

Plaintiff, on the other hand, reasons that AIG, by virtue of the uninsured motorist coverage, stood in the position of West and West's insurer. Sheets, the patient, had uninsured motorist coverage in her own (AIG) automobile insurance policy. The theory behind uninsured motorist coverage is to place the injured insured motorist in approximately the same position as he or she would have been, had the tortfeasor complied with the law and had carried, at least, the minimum statutorily required insurance coverage. (*Hartford Casualty Ins. Co. v. Cancilla* (1994) 28 Cal.App.4th 1305, 1311 [34 Cal.Rptr.2d 302] [" ' "[T]he purpose of the uninsured motorist statute is *not to make all drivers whole from accidents with uninsured drivers, but to make sure that drivers injured by such drivers are protected to the extent that they would have been protected had the driver at fault carried the statutory minimum of liability insurance.*" ' "]; *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1817 [21 Cal.Rptr.2d 56] [same]; *Hartford Fire Ins. Co. v. Macri* (1992) 4 Cal.4th 318, 324 [14 Cal.Rptr.2d 813, 842 P.2d 112] [The purpose of the uninsured motorist statute, which requires such coverage in every policy issued, is " 'to protect one lawfully using the highway by assuring him of payment of a minimum amount of an award to him for bodily injury caused by the actionable fault of another driver.' "]; *Fireman's Fund etc. Co. v. Ind. Acc. Com.* (1964) 226 Cal.App.2d 676, 677–678 [38 Cal.Rptr. 336] [same].) Because uninsured motorist coverage is a proxy for the coverage that would have been provided to the tortfeasor, if the tortfeasor had obtained insurance, the insurer may, adverse to its own insured, assert any defenses that could have been raised by the tortfeasor himself or herself, to reduce or defeat the uninsured motorist claim. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2008) ¶ 6:2099, p. 6G-12.) According to plaintiff, therefore, the insurer, as to the uninsured motorist portion of the coverage, stands in place of the tortfeasor. The injured patient's insurer therefore qualifies under Civil Code section 3045.1 as the "another" (i.e., a substitute for the third party tortfeasor) for purposes of the existence of an injured patient's claim "against another" to recover for medical costs. Similarly, under Civil Code section 3045.3, the notice provision, the uninsured motorist carrier qualifies as a "person, firm, or corporation known to the hospital and alleged to be liable to the injured person for the injuries

received," or the "insurance carrier . . . which has insured the person, firm, or corporation alleged to be liable to the injured person against the liability."

■ Plaintiff's contention, though novel, is not persuasive. In effect, plaintiff's theory treats the uninsured motorist coverage as third party insurance coverage. We find, though, that it is not: "These [i.e., uninsured and underinsured motorist coverages] are *not* 'third party' coverages. They are strictly 'first party' coverages because the insurer's duty is to *compensate its own insured for his or her losses*, rather than to indemnify against liability claims from others. [See *Neal v. Farmers Ins. Exch[ange]* (1978) 21 [Cal.3d] 910, 920 [148 Cal.Rptr. 389, 394, 582 P.2d 980]]." (Croskey et al., Cal. Practice Guide: Insurance Litigation, *supra*, ¶ 6:2095, p. 6G-11.)

The HLA was, by its own terms, not intended to include first party insurance coverage. The patient (Sheets) is contractually liable to the hospital to pay for medical treatment of all kinds, and not merely emergency or ongoing care arising out of an accident or wrongful act. Therefore, there was no need to create a statutory lien as between the hospital and the patient/first party insured. Also, there would be no reason to limit the hospital's recovery, as between the hospital and the patient, to "50 percent of the moneys due under any final judgment, compromise, or settlement agreement," where the "final judgment, compromise, or settlement agreement" consists solely of the patient-insured's first party claim with its own insurance carrier. The hospital or its assignee has a continuing contractual right to obtain 100 percent payment from the patient irrespective of uninsured motorist coverage. Clearly, the Legislature was aware of these circumstances, and if they had intended the HLA to include first party (uninsured and underinsured) insurance coverage they would have expressly included them within the HLA provisions.

■ As this court has stated elsewhere, "[Civil Code section 3045.3] does not reduce the patient's *contractual* liability for the full value of the services rendered, but the entire amount is not recoverable as a *lien*. A lien attaches without the necessity of filing an independent action and pursuing it to judgment; rather, it is a mechanism by which sums may be recovered from a specified fund or asset without a separate litigation, or its associated expense. A hospital lien can attach to nothing other than settlement or judgment funds provided by a third party liable for the patient's injuries. In 100 percent of the cases, someone, such as an insurance carrier, will be making a payment to the injured person as a 'final judgment, compromise, or settlement.' That payment, from the insurer or other person, to the patient, is subject to the payment of prior liens, if any, and then for the hospital lien, 'or so much thereof as can be satisfied out of 50 percent of the moneys due under [the] final judgment, compromise, or settlement.' If the hospital could nevertheless

insist that a greater percentage of the settlement or judgment be paid to it for its lien, on the ground that Civil Code section 3045.4 does not limit the patient's liability for the lien, then the 50 percent limitation would be rendered nugatory. ██ We must avoid any statutory construction which renders a portion of the statutory language meaningless. Moreover, the statutory purpose, as articulated by the California Supreme Court in *Mercy Hospital*, would also be defeated, to preserve a portion of the monetary recovery to the patient himself or herself, to ameliorate other losses caused by the [tortious] injury, and to avoid pauperizing the patient altogether. [¶] . . . The lien operates only as to funds paid in judgment, settlement, or other compromise, of third-party liability for the injuries for which the hospital incurred charges. There will always, and only, be a payor fund to which the lien could apply. The 50 percent limitation unequivocally applies to this fund." (*Newton v. Clemons, supra,* 110 Cal.App.4th 1, 16–17, italics & fns. omitted.)

The first party insured would be, as noted, contractually obligated to pay for any covered medical care, up to 100 percent of the policy limits. No lien procedure is necessary, and a 50 percent limitation makes no sense. The HLA is thus inapplicable to first party insurance claims.

██ Here, AIG was the patient's first party insurer. Plaintiff failed to file a notice of lien either with the third party tortfeasor, West, or with West's insurance carrier, if any. The HLA is inapplicable to first party insurance claims, and thus the notice to AIG was ineffective to bring into being a lien under the HLA. AIG was, consequently, not obligated to honor or respond to the notice of plaintiff's purported HLA lien.[2]

All three stated causes of action—negligence, breach of fiduciary duty (bad faith), and unfair business practices—are predicated on the applicability of the HLA and the efficacy of plaintiff's notice to create an HLA lien. Because the HLA does not apply, the gravamen of each stated cause of action necessarily fails. Further, the inapplicability of the HLA renders it impossible for plaintiff to cure any pleading defects by amendment. The trial court therefore did not abuse its discretion in sustaining the demurrer without leave to amend.

---

[2] Tellingly, although plaintiff's complaint alleged that it had given HLA lien notices to AIG in the past, and that AIG had previously honored the liens, AIG pointed out that plaintiff failed to specify whether the previously honored lien notices were sent to AIG as the insurer of a third party tortfeasor, rather than as a first party insurer of the injured patient. In its opposition to the demurrer below, and in its briefing on appeal, plaintiff fails to respond to this point, or otherwise indicate the circumstances under which AIG had paid plaintiff's previous lien claims. We take this as an indication that plaintiff would be unable to amend the complaint to state that its HLA claims had ever been honored in a first party context.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendant and respondent, AIG.

Richli, Acting P. J., and Gaut, J., concurred.