Filed 9/19/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LONG BEACH MEMORIAL MEDICAL CENTER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>    Defendant and Respondent. | B321876<br><br>(Los Angeles County Super. Ct. No. 21STCV17810) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge. Reversed with directions.

Law Offices of Yoshida & Garcia and Shogo Garcia for Plaintiff and Appellant.

Pollak, Vida & Barer, Daniel P. Barer and Anna L. Birenbaum for Defendant and Respondent.

# INTRODUCTION

Under the Hospital Lien Act (HLA) (Civ. Code, §§ 3045.1-3045.6),[1] "when a hospital provides care for a patient, the hospital has a statutory lien against any . . . settlement received by the patient from a third person responsible for his or her injuries, or the third person's insurer, if the hospital has notified the third person or insurer of the lien." (*Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 215 (*Mercy Hospital*).)  The HLA prohibits an insurer from paying a patient without paying the hospital the amount of its lien, or as much as can be satisfied from 50 percent of the patient's recovery from the tortfeasor or insurer.

The insurer in this case had notice of the hospital's lien for treatment provided to the patient and, pursuant to a settlement agreement with the patient, gave him a check for the lien amount made payable to both him and the hospital.  Did that comply with the HLA?  The hospital, Long Beach Memorial Medical Center, claims it did not and sued the insurer that wrote the check, Allstate Insurance Company, for violating the HLA by making a settlement payment to the patient without paying the Medical Center the amount of its lien.

The trial court granted Allstate's motion for summary judgment, ruling Allstate's two-payee check, which was never cashed, satisfied its obligation under the HLA.  We reach the opposite conclusion:  Merely delivering to the patient (or, in this case, his attorney) a check for the lien amount, made payable to

---

[1]     Undesignated statutory references are to the Civil Code.

both the patient and the hospital, is not payment in satisfaction of the hospital's lien under the HLA. Therefore, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2017 the Medical Center treated Vernon Barnes for injuries he received in a car accident. Afterward Barnes submitted a personal injury claim to Allstate, which insured the driver Barnes claimed was at fault in the accident. The Medical Center informed Allstate by letter that Barnes had incurred $116,714.67 in expenses for his treatment at the Medical Center and that the Medical Center was asserting a lien for that amount under the HLA.

In February 2020 Barnes and Allstate settled his claim for $300,000. The settlement agreement provided Allstate would pay this amount by sending Barnes's attorneys three checks: one made payable to Medicare for $24,230.93, one made payable to Barnes and his attorneys for $159,054.40, and one made payable to Barnes and the Medical Center for $116,714.67, the amount of the lien. The settlement agreement also provided Barnes and his attorneys would indemnify, defend, and hold harmless Allstate and its insured against claims by the Medical Center or anyone else with a statutory right of recovery against Allstate and its insured.

Later in February 2020 Allstate sent Barnes's attorneys a check for $116,714.67 made payable to Barnes and the Medical Center (the February 2020 check).[2] That check, however, was

_____

[2] No copy of this check appears in the record, and there is some confusion about whether it included Barnes's attorneys as

3

never deposited, and by March 2021 it had expired. At that time Allstate sent Barnes's attorneys a second check for the same amount made payable to the same parties (the March 2021 check). To Allstate's knowledge, that check was never cashed.

In May 2021 the Medical Center filed this action against Allstate, asserting a single cause of action for violating the HLA. The Medical Center alleged that Allstate, having received written notice of the Medical Center's lien regarding Barnes's medical treatment, violated the HLA by paying Barnes to settle his personal injury claim without paying the Medical Center the amount of its lien.

Allstate filed a motion for summary judgment, contending the Medical Center could not establish one or more elements of its cause of action. Specifically, Allstate argued the undisputed facts established that it "protected the lien by issuing a two-party check including [the Medical Center] as a payee on the check" or, alternatively, that "there has been no payment because the multi-party check has not been cashed." Allstate did not specify whether the check it referred to was the February 2020 check or the March 2021 check. But the gist of Allstate's argument appears to have been that, by delivering to Barnes's attorneys a check for $116,714.67 made payable to Barnes and the Medical Center, Allstate had either (a) made a payment to the Medical Center for the amount of its lien or (b) made no payment to either Barnes or the Medical Center because no such check was ever

payees in addition to Barnes and the Medical Center. Neither party suggests the possible inclusion of Barnes's attorneys as payees on the check is relevant to the issues in this appeal, and it does not affect our analysis. We treat the check as having been made payable only to Barnes and the Medical Center.

cashed.  In either event, according to Allstate, the Medical Center could not establish Allstate made a settlement payment to Barnes without paying the Medical Center the amount of its lien.

In opposition, the Medical Center agreed the undisputed facts established Allstate had not paid it the amount of its lien because no check payable to the Medical Center had been cashed. The Medical Center disagreed, however, that this also meant Allstate had not made a settlement payment to Barnes.  The Medical Center pointed out the settlement agreement between Barnes and Allstate called for Allstate to send Barnes's attorneys a separate check payable to Barnes and his attorneys for $159,054.40.  The Medical Center also cited an exhibit to a declaration by counsel for Allstate in support of the motion for summary judgment that appeared to show just such a check had been issued, mailed, and cashed in February 2020.[3]

After a hearing, for which we do not have a reporter's transcript, the trial court granted Allstate's motion for summary judgment without written analysis.  The Medical Center timely appealed.

---

[3]     Allstate asserts that this exhibit was "erroneously-included" [*sic*] and not properly authenticated and that, had the Medical Center "raised the argument about [this] check in the trial court, Allstate could have responded to that argument during the briefing on the summary judgment motion and could have remedied the incorrect exhibit."  This is an odd assertion, given how clearly the Medical Center raised the argument in its opposition papers (under the heading "The Undisputed Material Facts Show That Vernon Barnes and His Counsel Received Separate Settlement Payment from ALLSTATE of at Least $159,054.40").  In any event, the issue is irrelevant to our resolution of this appeal.

## DISCUSSION

A. *Applicable Law: Summary Judgment Standards*

"A court may grant a motion for summary judgment only when all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Fajardo v. Dailey* (2022) 85 Cal.App.5th 221, 225, internal quotation marks omitted; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Randle v. Farmers New World Life Ins. Co.* (2022) 85 Cal.App.5th 53, 61.) "A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense." (*Sabetian v. Exxon Mobil Corp.* (2020) 57 Cal.App.5th 1054, 1068; see § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*); *Randle*, at p. 61.)

"Where, as here, the defendant moves for summary judgment on the grounds that one or more elements of the plaintiff's [cause of action] cannot be established, the defendant must present evidence that either 'conclusively negate[s] an element of the plaintiff's cause of action' or 'show[s] that the plaintiff does not possess, and cannot reasonably obtain,' evidence needed to establish an element . . . ." (*White v. Smule, Inc.* (2022) 75 Cal.App.5th 346, 354; see *Aguilar*, *supra*, 25 Cal.4th at pp. 853-855.) "'Only after the defendant carries that initial burden does the burden shift to the plaintiff "to show that a triable issue of one or more material facts exists as to the cause of action . . . ."'" (*Fajardo v. Dailey*, *supra*, 85 Cal.App.5th

6

at pp. 225-226; see Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at pp. 849-850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; see *Lemm v. Ecolab Inc.* (2023) 87 Cal.App.5th 159, 169.)

"'"""We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'" [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Lemm v. Ecolab Inc.*, *supra*, 87 Cal.App.5th at pp. 168-169.)

B. *More Applicable Law: The Hospital Lien Act*

Enacted in 1961, the HLA creates a "statutory medical lien in favor of a hospital against third persons liable for the patient's injuries." (*Mercy Hospital*, *supra*, 15 Cal.4th at p. 217; see Stats. 1961, ch. 2080, § 1, p. 4340.) "Under the HLA, any hospital 'which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or wrongful act . . . shall, if the person has a claim against another for damages on account of his or her injuries, have a lien upon the damages recovered, or to be recovered, by the person . . . to the extent of the amount of the reasonable and necessary charges of the hospital and any hospital affiliated health facility . . . .' (§ 3045.1.) 'The lien shall apply whether the damages are recovered, or are to be recovered, by judgment, settlement, or compromise.' (§ 3045.2.) The hospital's recovery

on the lien is, however, limited 'to an amount which could be satisfied from 50 percent of the' amount recovered by the injured person from the tortfeasor." (*Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595, 601, fns. omitted.)

For the hospital's lien to become effective, "the hospital must provide written notice of, among other things, 'the amount claimed as reasonable and necessary charges' to the third party alleged to be liable to the injured person and to any known insurer of that third party." (*State Farm Mutual Automobile Ins. Co. v. Huff* (2013) 216 Cal.App.4th 1463, 1469 (*State Farm*), quoting § 3045.3.) The HLA "imposes liability on a properly notified third party or insurer for the amount the hospital was entitled to receive as payment for treating the injured person if the third party or insurer pays the injured person without first paying the hospital as much of the lien amount as can be paid from 50 percent of the amount due under a final judgment, settlement, or compromise after payment of prior liens." (*State Farm*, at p. 1469, citing § 3045.4.)[4] The HLA enables a hospital to "'enforce' its lien by filing an action, within one year of the date

---

[4] Section 3045.4 provides, in relevant part: "Any person, . . . including, but not limited to, an insurance carrier, making any payment to the injured person, or to his or her attorney, . . . for the injuries he or she sustained, after the receipt of the notice as provided by Section 3045.3, without paying to the . . . institution or body maintaining the hospital the amount of its lien claimed in the notice, or so much thereof as can be satisfied out of 50 percent of the moneys due under any final judgment, compromise, or settlement agreement . . . shall be liable to the . . . institution or body maintaining the hospital for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person."

the settlement or judgment proceeds were paid to the injured person, against the entity 'making the payment and to whom such notice was given as herein provided.'" (*County of San Bernardino v. Calderon* (2007) 148 Cal.App.4th 1103, 1110, quoting § 3045.5; see *County of Santa Clara v. Escobar* (2016) 244 Cal.App.4th 555, 580 ["the HLA expressly entitles the hospital to proceed directly against a tortfeasor who pays the injured person without honoring the lien," italics omitted].)

Taken together, these provisions serve the HLA's purpose: "to secure part of the patient's recovery from liable third persons to pay his or her hospital bill, while ensuring that the patient retained sufficient funds to address other losses resulting from the tortious injury." (*Mercy Hospital*, *supra*, 15 Cal.4th at p. 217; accord, *County of San Bernardino v. Calderon*, *supra*, 148 Cal.App.4th at p. 1109.) It was to balance "these competing interests," for example, that "the Legislature limited the amount of a hospital's lien on the settlement or judgment proceeds that a tortfeasor pays an injured person to 'the reasonable and necessary charges of the hospital' for treating the injury [citation]—the same amount of medical expenses the injured person may recover as damages from the tortfeasor." (*State Farm*, *supra*, 216 Cal.App.4th at p. 1471.)

C.     *Application of All That Law (and More)*

The Medical Center contends the trial court erred in ruling Allstate demonstrated the Medical Center could not establish Allstate made a settlement payment to Barnes without paying

the Medical Center the amount of its lien.  We agree with that contention.

Abandoning the alternative argument it made in the trial court—i.e., that Allstate never made a settlement payment to Barnes because "the multi-party check" was not cashed—Allstate goes all in on its argument that giving Barnes's attorneys a check for $116,714.67 made payable to Barnes and the Medical Center constituted a payment to the Medical Center for the amount of its lien.  Allstate maintains that it made this payment to the Medical Center "concurrent with payment to Barnes" and that, therefore, the Medical Center cannot establish Allstate made a settlement payment to Barnes without paying the Medical Center the amount of its lien.  As in the trial court, Allstate declines to specify which check made payable to the Medical Center as co-payee—the February 2020 check or the March 2021 check— Allstate claims satisfied its payment obligation to the Medical Center.[5]  But it doesn't matter:  Neither check was a payment to the Medical Center.

Citing *Crystaplex Plastics, Ltd. v. Redevelopment Agency* (2000) 77 Cal.App.4th 990 (*Crystaplex*), Allstate argues the check(s) in question constituted payment to the Medical Center because a "check issued to multiple payees, delivered to one payee, is delivery of a check."  (See *id.* at p. 998 [under principles of constructive possession, delivery of a check "to one of the joint

---

[5]     Given that Allstate no longer appears to dispute it made a separate settlement payment to Barnes in February 2020, Allstate presumably has in mind the February 2020 check.  On the other hand, it's hard to argue an expired check paid anyone for anything.

payees is delivery to all of them"].)[6] But that Allstate may have constructively delivered the check(s) to the Medical Center does not mean Allstate made a "payment" to the Medical Center. (See § 1478 ["Performance of an obligation for the delivery of money only, is called payment."].) On the contrary, as a general rule "'a check of itself is not payment until cashed . . . .'" (*Hale v. Bohannon* (1952) 38 Cal.2d 458, 467; accord, *Cornwell v. Bank of America* (1990) 224 Cal.App.3d 995, 1000; see *Navrides v. Zurich Ins. Co.* (1971) 5 Cal.3d 698, 706 [a "'check is never a payment of the debt for which it is given until the check itself is paid or otherwise discharged'"]; *Hale*, at p. 467 [the "'mere giving of a check does not constitute payment'"]; *Mendiondo v. Greitman* (1949) 93 Cal.App.2d 765, 767 [same]; *Art Frost of Glendale v. Hooper* (1955) 130 Cal.App.2d Supp. 903, 906 ["[u]ntil the check involved here was cashed, . . . the obligation of the drawer remained in existence"]; *Bass v. Olson* (9th Cir. 1967) 378 F.2d 818, 820 ["under governing California law, mere possession of an uncashed check is not equivalent to payment," and therefore, "prior to the actual presentation of the check at the bank," the defendant, who physically possessed the check, "was never 'paid'"].) There is no evidence either check Allstate made out to

---

[6] *Crystaple*x, *supra*, 77 Cal.App.4th 990 involved a cause of action under Commercial Code section 3309, which "allows the payee of a check to enforce it against the drawer when the check has been lost or stolen." (*Crystaplex*, at p. 995.) The court held the plaintiff sufficiently pleaded the first element of that cause of action—"that 'the person was in possession of the instrument and entitled to enforce it when loss of possession occurred'"—by alleging that the plaintiff "was a joint payee of the check, and that the check was delivered to a copayee." (*Id.* at pp. 998-999.)

11

the Medical Center as a co-payee was ever cashed.  In fact, it appears undisputed that neither was.

An exception to the general rule that mere delivery of a check is not payment may apply where the parties have agreed otherwise.  (See *Navrides v. Zurich Ins. Co.*, *supra*, 5 Cal.3d at p. 706 [a check does not constitute payment "'unless expressly agreed to be taken in payment'"]; *Beazell v. Kane* (1954) 127 Cal.App.2d 593, 596 ["an agreement to accept a check as payment obviates the rule"]; *Art Frost of Glendale v. Hooper*, *supra*, 130 Cal.App.2d Supp. at p. 906 ["In the absence of an agreement that a check is to constitute payment, it does not discharge the obligation for which it is given."].)  But "'the party attempting to prove payment by mere delivery or acceptance [of a check] must go further and in addition prove that such delivery and acceptance was in accordance with an agreement that it was to be accepted as payment.'"  (*Hale v. Bohannon*, *supra*, 38 Cal.2d at p. 467; accord, *Cornwell v. Bank of America*, *supra*, 224 Cal.App.3d at p. 1000; *Mendiondo v. Greitman*, *supra*, 93 Cal.App.2d at p. 767.)  Allstate does not invoke the exception to the general rule here, let alone cite evidence of an agreement between it and the Medical Center regarding delivery or acceptance of a check as payment.[7]

Finally, Allstate argues "public policy supports a finding that [its] conduct did not violate the HLA."  Allstate suggests the

---

[7]    The record does contain one-sided correspondence from attorneys representing the Medical Center to attorneys representing Allstate stating Allstate could satisfy its payment obligation to the Medical Center by sending the Medical Center's attorneys a check for the lien amount made payable to the Medical Center.  Which, of course, was not done.

12

Medical Center was not harmed by the manner in which Allstate purported to satisfy its obligations under the HLA because, "when a check is delivered to one of multiple payees, all payees [must] negotiate the check," and all the Medical Center "had to do was resolve the lien with Mr. Barnes." Allstate, however, cites no authority authorizing courts to create a public policy exception to the HLA. And Allstate's argument the Medical Center suffered no harm because it could "resolve" its lien with Barnes seems disingenuous: The obvious point of including Barnes as co-payee was to empower him to negotiate keeping some portion of the amount of the Medical Center's lien for himself. The HLA does not condition the hospital's right to payment on the timing or resolution of a negotiation between the patient and the hospital.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting Allstate's motion for summary judgment and enter a new order denying the motion.  The Medical Center is to recover its costs on appeal.


SEGAL, J.



We concur:



PERLUSS, P. J.



FEUER, J.

14